DONALD SEMPEK ET AL., APPELLEES, V. BERNARD J.
MINARIK ET AL., APPELLANTS.

264 N. W. 2d 426

Filed April 5, 1978. No. 41415.

Michael J. Dugan and Martin W. Penkwitz of Costello & Dugan, for appellants.

John J. Higgins of Eisenstatt, Higgins, Kinnamon, Okun & Stern, for appellees.

Heard before WHITE, C. J., BOSLAUGH, and WHITE, JJ., and WARREN and KORTUM, District Judges.

WARREN, District Judge.

Donald Sempek and John R. Walsh, plaintiffs and appellees herein, brought this action in the municipal court for the City of Omaha to recover damages suffered due to a breach of their implied covenant of quiet enjoyment, claiming they were wrongfully evicted from an 100-acre tract on the Platte River near Valley, Nebraska, owned by the defendants, Bernard J. Minarik and Helen Minarik, after they had made cabin improvements under oral tenancies from year-to-year. After trial, municipal judge William F. Ryan found for the defendants and dismissed plaintiffs' petition. On appeal to the District Court and a trial de novo on the record, the District Court found generally for plaintiffs and entered a single judgment for plaintiffs in the total sum of $4,999. Defendants Minarik appeal from an order overruling their motion for new trial.

On March 22, 1968, plaintiff John R. Walsh orally agreed with the defendant Dr. Bernard J. Minarik (hereinafter called Minarik) to lease a portion of the Minarik river tract for a cabin site and family recreational use on a year-to-year basis for $200 a year

rent. Walsh put up a cabin in May of 1968. In 1970, one John Lesak made a similar oral lease with Minarik. Plaintiff Donald Sempek, by agreement with Minarik, assumed the tenant's obligations of the Lesak lease in 1971, and in that year he erected a modern, two-bedroom cabin at a cost of $4,000. Annual rentals were paid by each plaintiff to Minarik until the 1973-74 lease year.

In October 1972, defendant Minarik announced to plaintiffs and others at a picnic on the premises that he was contemplating sale of the property, but assured the tenants they would be protected so far as their cabins and leases were concerned, and they would either be given compensation or time to remove their improvements.

A tenancy from year-to-year " 'can only be terminated by agreement of the parties, express or implied, or by notice given, six calendar months ending with the period of the year at which the tenancy commenced.' " Barnes v. Davitt, 160 Neb. 595, 71 N. W. 2d 107 (1955).

The year-to-year tenancy of Walsh would have expired March 22, 1973, if he had received notice of termination 6 months before; similarly, the Sempek tenancy could have been terminated May 29, 1973, by 6 months previous notice. Defendants admit that no such notice of termination was given to either Walsh or Sempek prior to the 1973 renewal dates. The oral leases therefore were in effect for the respective years ending March 22, 1974 (Walsh) and May 29, 1974 (Sempek).

In the spring of 1973, both Walsh and Sempek, having heard a sale was in the offing, inquired of Minarik and were told in vague terms that he was selling to some unnamed party, but that "they got it all screwed up, and I'm not going to go through with it if they don't get it straightened out." Minarik again assured plaintiffs that they would be kept informed and that all tenants would be protected.

In May 1973, both Walsh and Sempek were physically prevented from entering the property by persons claiming to represent the new owners, the Flinn people, who changed the lock on the gate padlock and told plaintiffs they could not go onto the premises to use their cabins or to remove any personal property. On at least one occasion, an armed guard was stationed at the entry gate to prevent entrance. On further inquiry by Walsh, after being barred from entry, Minarik told Walsh "Well, they say they bought the cabins, and I say they didn't." Then Minarik's attorney referred Walsh to the attorney for the Flinns, who contended that Flinns bought the cabins.

On May 31, 1973, there were recorded two deeds to the subject property from Dr. B. J. Minarik and Helen Minarik to Truman Clare, trustee; the first being a warranty deed which had been executed on December 29, 1972; and the second, a quitclaim deed to the same property executed May 29, 1973.

Upon inquiry through their attorneys, plaintiffs then learned that defendants had on October 5, 1972, accepted a written offer to purchase the 100 acres made by Mathew L. Flinn, c/o Truman Clare, for $100,000, with final settlement scheduled for November 2, 1972. The contract, which was not recorded, provided for conveyance free and clear of all liens and encumbrances, "except rights to lessees of cabin leases, a list of which is attached hereto; said lessees are on an oral year-to-year tenancy, the area of which tenancies is attached in the attached list." The attachment listed among others: John Walsh, expiration date March 22, 1973; Sempek, expiration date May 29, 1973; and the footnote was: "* Indicates nice cabin."

Walsh and Sempek testified that neither paid the $200 rental in 1973 because of confusion at that time as to whether a sale was pending or who the new owner was if a sale had been made. Walsh testified

that his leasehold interest had a reasonable annual value of $1,000 to $1,500 a year; and Sempek valued his lease at $2,000 per year. Sempek testified his cabin had a fair market value of $5,000 to $6,000 at the time of trial.

Defendants offered no testimony, but defendants' attorney, when called by plaintiffs, testified that he had on October 9, 1972, and again in April 1973, prepared written notices to each plaintiff to vacate the premises as of the 1974 renewal dates, but that he sent the notices to Dr. Minarik with instructions to sign and serve them. The notices to vacate were signed by "Bernard J. Minarik, Owner," but were never served.

The theory of defendants' assignment of error, although somewhat difficult to discern, seems to be that even if defendants did breach the implied covenant of quiet enjoyment, their actions did not proximately cause any damage to the plaintiffs because they had already deeded the land to the purchaser Truman Clare, trustee, on December 29, 1972, and so Minariks were not the owners-landlords in May 1973, when plaintiffs were evicted by the new owners. In effect, Minariks say: "We didn't do it; they did; you should sue them." Defendants offered in evidence a petition by Sempek and Walsh, plaintiffs, v. Truman Clare, trustee, defendant, which had been filed in the District Court for Douglas County, Nebraska, on the same date as this action was commenced. The District Court action was admittedly still pending at the time of the trial of the instant case, and prayed for damages arising out of the same incident.

We note that the Minariks first contracted to sell the premises subject to the Walsh and Sempek oral year-to-year leases expiring "March 22, 1973," and "May 29, 1973," and then in December of 1972 by warranty deed conveyed the premises to Truman Clare, trustee, "free of encumbrances except ease-

ments and restrictions of record." It clearly appears that defendants thereby represented to the new owners they could rightfully bar Walsh and Sempek from the premises after May 29, 1973.

"In the absence of an express covenant inconsistent therewith, the ordinary lease of realty raises an implied covenant that the lessee shall have the quiet and peaceable possession and enjoyment of the leased premises, so far as regards the lessor, or anyone lawfully claiming through or under him, or anyone asserting a title to the leased premises superior and paramount to that of the lessor." Annotation, 41 A. L. R. 2d 1414, at p. 1420.

"* * * the rule ordinarily is announced that, in the absence of a provision to the contrary, such covenant is implied in every lease, and leases by parol are included within the scope of this rule." 51C C. J. S., Landlord & Tenant, § 323 (1), p. 831.

"The execution of a lease of real estate ordinarily raises an implied covenant that the lessee shall have the quiet and peaceable possession and enjoyment of the leased premises as against anyone asserting a title paramount to the lessor unless there is some express covenant of a more limited character inconsistent with such a covenant." Grand Island Hotel Corp. v. Second Island Development Co., 191 Neb. 98, 214 N. W. 2d 253 (1974).

"The fact that the lessor has sold the premises subject to the lease does not relieve him from liability for damages for failure to deliver possession." Canaday v. Krueger, 156 Neb. 287, 56 N. W. 2d 123 (1952).

The plaintiffs were entitled to the benefit of the implied covenant of quiet enjoyment. It was breached by their actual eviction from the premises through the actions of purchasers claiming through the defendants Minarik. Minariks could not evade their contractual obligation as lessors by selling and conveying the property to a third person. It is evident that plaintiffs may choose to pursue their legal

remedies against the parties with whom they dealt, leaving the matter of filing a third party action against the Minariks if they so desire.

The prevailing view supports the rule that for a breach of the covenant for quiet enjoyment resulting in eviction, the tenant is entitled to the value of the unexpired term, that is, the difference between the actual value of the unexpired term and the agreed rent, such value being measured usually by the rental value. Special damages which are within the contemplation of the parties and resulting directly and proximately from the breach of a covenant of quiet enjoyment are recoverable if they can be established with reasonable certainty. 49 Am. Jur. 2d, Landlord and Tenant, §§ 349, 350, pp. 362, 363.

" 'The measure of damages for the wrongful eviction of a tenant by his landlord * * * is ordinarily the rental value of the property for the unexpired term, less the amount of rent reserved by the lease. In a proper case special damages in addition may be awarded, where such damages are certain and the natural result of the wrong complained of.' " Jarman v. Sexton, 130 Neb. 453, 264 N. W. 305 (1936). See, also, Shutt v. Lockner, 77 Neb. 397, 109 N. W. 383 (1906).

Here the undisputed testimony of the plaintiffs regarding the value of their leasehold interests and the value of the improvements on leased lands which were lost as a direct result of the eviction clearly establishes damages exceeding the judgment for $4,999 in damages, which was limited to that amount by the jurisdiction of the municipal court.

The judgment of the trial court was correct and is affirmed.

AFFIRMED.