AL MOUDRY AND LOUIS PARKOS, APPELLEES AND CROSS-APPELLANTS, V. VIRGINIA PARKOS, APPELLANT AND CROSS-APPELLEE.

349 N.W.2d 387

Filed June 1, 1984. No. 83-550.

Curtis A. Sikyta, for appellant.

Robert E. Wheeler of Stowell & Wheeler, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Virginia Parkos, appeals from an order entered by the district court for Valley County, Nebraska, determining that Virginia Parkos did not have any rights as a tenant in and to certain real estate legally described as the southwest quarter of Section 13 and the southeast quarter of Section 14, all in Township 19 North, Range 16 West, of the 6th P.M., Valley County, Nebraska. For reasons more particularly set out in this opinion, we reverse and remand the case with directions.

The record discloses that on June 27, 1980, Louis Parkos (owner), the owner of the real estate in question, entered into a farm lease with Virginia Parkos (tenant) and her husband, Elmer Parkos. The lease was for a period of 1 year from the 1st day of March 1980 to the 28th day of February 1981. This was not the first time the parties had had such an arrangement. In fact, owner had leased the land to tenant since 1950, and the parties had had, over the years, what the record would describe as a stormy relationship, but one which had continued from year to year since 1950. The record is unclear but leaves the impression that in most years there was not a written lease executed, though in certain years, including

1980, a formal lease was signed. This action was commenced on May 31, 1983, and the plaintiffs initially sought a permanent injunction against Virginia Parkos alone, her husband, Elmer, having died. At some later time an amended petition was filed abandoning the request for an injunction and, instead, seeking declaratory relief. Owner maintains that tenant has no interest in the real estate because of the fact that the written lease executed by the parties terminated in February of 1981, and further because in July of 1981 owner served notice on tenant that the lease was to terminate. Additionally, owner maintains that on July 28, 1982, he filed suit in the county court for Valley County, Nebraska, against tenant, seeking to have her declared a trespasser, thereby terminating any carryover of the 1980 lease. Unfortunately, however, for owner, none of these purported acts are of any legal significance in this case. The expiration of the farm lease term on February 28, 1981, did not itself terminate the lease. It merely converted the lease to a tenancy from year to year.

In *Fisher v. Stuckey*, 201 Neb. 439, 445, 267 N.W.2d 768, 772 (1978), we said:

> It has long been the law in this jurisdiction that where lands are leased to a tenant for 1 year for a stipulated rent reserved, and after the expiration of the lease the tenant, without further contract, remains in possession, and is recognized as a tenant by the landlord in the receipt of rent for another year, this will create a tenancy from year-to-year; and in such case the tenancy can only be terminated by an agreement of the parties, express or implied or by notice given, 6 calendar months ending with the period of the year at which the tenancy commenced.

See, also, *Critchfield v. Remaley*, 21 Neb. 178, 31 N.W. 687 (1887); *Barnes v. Davitt*, 160 Neb. 595, 71 N.W.2d 107 (1955).

Once a farm tenancy from year to year is created,

it does not automatically terminate by the mere passage of time. In *Sempek v. Minarik*, 200 Neb. 532, 534, 264 N.W.2d 426, 428 (1978), we said:

> A tenancy from year-to-year " 'can only be terminated by agreement of the parties, express or implied, or by notice given, six calendar months ending with the period of the year at which the tenancy commenced.' " [Citation omitted.]

> The year-to-year tenancy of Walsh would have expired March 22, 1973, if he had received notice of termination 6 months before; similarly, the Sempek tenancy could have been terminated May 29, 1973, by 6 months previous notice. Defendants admit that no such notice of termination was given to either Walsh or Sempek prior to the 1973 renewal dates. The oral leases therefore were in effect for the respective years ending March 22, 1974 (Walsh) and May 29, 1974 (Sempek).

We have also had occasion to establish certain rules as to when a farm lease begins and ends, absent an express agreement of the parties to the contrary. In *Holtman v. Lallman*, 122 Neb. 183, 239 N.W. 820 (1931), we said: "Generally in this state, in the absence of any different agreement, a yearly lease of farm lands begins on March 1 and ends on February 28, of the succeeding year, and the rental becomes due at the expiration of the term." (Syllabus of the court.) Therefore, whether we consider the lease year in this case as beginning and ending in accordance with the period referred to in the lease originally executed by the parties for the year 1980-81, or simply the general law, it is clear that after the lease of 1980-81 expired on February 28, 1981, tenant continued on a year-to-year tenancy until owner gave proper notice 6 months prior to February 28 of any year in which the lease was to terminate. Owner concedes that he did not give notice for the 1981-82 year, but argues that he did give such

notice for the 1982-83 year. We believe that the evidence fails in this regard.

Turning first to the question of whether owner gave actual notice to tenant for the 1982-83 year, the evidence offered by owner in support of that position is a return of service executed by the Valley County sheriff reciting that on July 27 and July 29, 1981, he served a "Notice to Quit." We are not, however, provided with a copy of that "Notice to Quit" and do not know the terms thereof, or if, indeed, it was a proper notice directing tenant that the lease was to terminate at the expiration of the current lease period. On the other hand, the notice may have been nothing more than a 3-day notice to quit, the exact type of which the record reflects that owner served on tenant in 1978 when owner attempted once before to evict tenant. The county court for Valley County, Nebraska, in 1978, found that this 3-day notice was ineffective to terminate the lease, and denied relief to owner. In the instant case we are asked to guess whether the notice that was served was proper and adequate.

The fact that the sheriff, in 1981, served a paper entitled "Notice to Quit" and the fact that the paper was served upon Virginia and Elmer Parkos are not sufficient evidence to sustain the burden of proof imposed upon owner to prove that he gave proper notice to terminate. It is elementary that the burden of proof is upon the plaintiff to prove those things which constitute the necessary elements of his cause of action, and a defendant bears the burden of proving those things which constitute affirmative defenses. In *Empire State Building Co. v. Bryde*, 211 Neb. 184, 191-92, 318 N.W.2d 65, 69 (1982), we said: " ' "The burden of proof means the duty resting on one party or the other to establish by a preponderance of the evidence an issue essential to recovery." ' " Merely introducing in evidence a sheriff's return, without a copy of the notice and with no testimony as to what the notice said, does not satisfy the

plaintiff's burden. Evidence from which a conclusion can be arrived at only by guess or conjecture does not sustain one's burden of proof. See *Everett v. Hening*, 174 Neb. 573, 118 N.W.2d 639 (1962). We must therefore disregard the purported "notice."

Owner argues further, however, that even if the notice served by the sheriff was somehow ineffective, then the suit he filed against tenant in the county court for Valley County, Nebraska, on July 28, 1982, was sufficient and should be considered an appropriate notice to terminate. We need not decide whether the filing of a lawsuit seeking to have one declared a trespasser does in fact satisfy the requirement for giving notice to terminate a year-to-year farm lease, because the evidence, again, is insufficient to even raise the question. The record does not disclose that any summons was issued to or served on the tenants. Tenant testified that she was never served with summons, and there is nothing in the record to dispute or contradict her position. The suit was simply ineffective to serve as notice.

And, finally, owner argues that, in any event, on March 10, 1983, he entered into a farm lease with Al Moudry for this property for a period beginning March 1, 1983, and ending March 1, 1985, and that Moudry recorded the farm lease and entered into the lease without knowledge of the Parkos tenancy. While the evidence would dispute whether in fact Moudry did not know about the existence of the tenant, as a matter of law, one takes property subject to the rights of persons in possession. See *Gregory v. Pribbeno*, 143 Neb. 379, 9 N.W.2d 485 (1943). Where, as here, the evidence discloses that tenant had machinery on the property and was in possession of the property at the time that the lease with Moudry was executed, Moudry took subject to the rights of tenant, and his recording of a document does not deprive tenant in possession of any lawful rights she might otherwise possess.

This is an example of a relatively simple and

straightforward matter which has become complicated and confused. The owner is entitled to terminate a lease of his property with a tenant so long as he does it in accordance with law and in a timely fashion. This means that 6 months in advance of when the owner wishes to terminate the lease, he should prepare and send to the tenant a notice indicating that the owner intends to terminate the tenancy on February 28 and demands possession of his property. And if the tenant fails to give up possession, the owner may then file suit and, in attempting to prove the termination of the lease, can offer in evidence a copy of the notice supported by evidence of its service upon the tenant. Owner's having failed to do any of these things, the trial court was in error in declaring that tenant had no right to remain in possession. Unless and until the owner properly terminates the lease, the tenant may continue under a lease from year to year, subject of course to all of the continuing obligations of the tenant, including the requirement to pay the rent. For these reasons, therefore, the judgment of the trial court is reversed and the cause remanded with directions to declare that the lease of the property involved in this action is subject to the rights of the tenant, Virginia Parkos, until properly terminated.

Having thus disposed of the case, we need not consider the cross-appeal filed by Moudry, except to set aside that portion of the court's order which required Moudry to pay to tenant the cost of her seed; she is entitled instead to the proceeds of the planting.

REVERSED AND REMANDED WITH DIRECTIONS.