ELSIE STUTHMAN, APPELLEE, V. PAUL STUTHMAN, APPELLANT.
515 N.W.2d 781

Filed May 13, 1994.   No. S-92-043.

Paul Stuthman, pro se.

Frank J. Skorupa for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.
Further appellate review by this court was granted in this

litigation to consider whether the Nebraska Court of Appeals was correct in holding that forcible entry and detainer actions do not apply to agricultural property.

We reverse the decision of the Court of Appeals and hold that a landlord may regain possession of his or her agricultural property by forcible entry and detainer when the property is unlawfully and forcibly detained by another.

In this cause, Elsie Stuthman, hereinafter referred to as the landlord, filed a petition in the Colfax County Court seeking the return of certain agricultural property that she and her late husband had leased, by a written instrument, to their son Paul Stuthman, hereinafter referred to as the tenant.

The county court found that the landlord was entitled to regain possession of her property in Colfax County, and on appeal, the district court for Colfax County affirmed the judgment of the trial court. On appeal from the district court, the Court of Appeals held that the forcible entry and detainer statutes did not apply to the Stuthmans' lease because agricultural land was involved. The Court of Appeals then determined that under common law, a factual question existed as to whether a tenant continued to be recognized as a tenant after the written lease terminated. The Court of Appeals remanded the cause to the district court with direction to remand the cause to the county court for a determination of that factual question. *Stuthman v. Stuthman*, 2 Neb. App. 173, 507 N.W.2d 674 (1993).

## FACTS

On March 25, 1990, the tenant and his parents, Elsie and Ernst Stuthman, entered into a written lease whereby the tenant rented from his parents (1) real estate and farm buildings located on 135 acres of cultivated cropland, 9 acres of prairie grassland, and 6 acres of farmstead, collectively known as the Bernard Loseke farm, in Colfax County; (2) 15 acres of pastureland, but not the buildings, located on property known as the Fred Stuthman farm in Colfax County; and (3) a portion of a hog barn located on property known as the Martha Kreye farm in Platte County. By its terms, the lease was to terminate without notice on February 28, 1991.

The elder Stuthmans each owned an undivided one-half

interest in the property they rented to the tenant. Ernst Stuthman died during the term of the lease. In his will, Ernst devised his interest in the property to his wife with certain restrictions on her ability to convey it. After succeeding to her husband's interest in the property here involved, Elsie Stuthman appointed another son, Herbert Stuthman, to be manager of the farm property.

In a letter dated September 7, 1990, the landlord advised the tenant that she had appointed Herbert Stuthman as farm manager and that she would no longer discuss business matters with the tenant on the telephone or in person because the tenant had scared her. In the letter, the landlord also advised the tenant that "Herbert has stated that he will rent to you at least until next summer the Loseke house, corncrib, and barn for $1.00 rent if we do not have to provide insurance for the barn."

The tenant testified that he visited his mother in February 1991, hoping to settle with her on the 1990 lease and to agree on a lease for 1991. The tenant further testified that he was unable to arrange such a settlement or new lease because "the conditions [at the meeting] were not to talk" and the conversation was about "[e]verything except what [he] wanted to talk to."

On February 27, 1991, the day before the original lease was to expire, Herbert Stuthman sent the tenant copies of a proposed new lease that would have expired February 29, 1992. Under the proposed new lease, the tenant would have rented (1) a 12-acre alfalfa field; (2) the 9 acres of prairie grassland; (3) the 6-acre Loseke farmstead, including the house, corncrib, and cattle barn; and (4) the 15 acres of pastureland, but not the buildings, located on the property known as the Fred Stuthman farm. The tenant never executed this proposed lease.

After the March 25, 1990, lease expired on February 28, 1991, the landlord again offered to rent the tenant some, but not all, of the property that the tenant had rented under the March 25 lease. In a letter to the tenant dated April 23, 1991, the landlord's attorney wrote: "Your mother is not willing to rent the cropland to you. She is willing to rent you the six acre farmstead and the 15 acre pasture (but not the buildings)." The evidence fails to reflect that the parties ever entered into a new

lease.

On June 17, 1991, the landlord sent the tenant a notice of termination, advising him to leave the premises and stating that the landlord would file an action for possession of the property 3 days after service of the notice. The tenant remained on the property, and the landlord filed her forcible entry and detainer petition on July 2, 1991, in the county court. In his motion to dismiss and in his answer, the tenant claimed, inter alia, that he was a holdover tenant entitled to extend the lease for another term because his mother, by making "offers of exchange for the leased property," had established "a constructive and implied continuation of the lease" and had acted contrary to the termination clause of the lease.

After trial, the county court found that the lease had terminated by its terms, that the tenant had been served a 3-day notice to vacate, and that the tenant "continues to unlawfully and forcibly detain said premises." The county court held that the landlord was entitled to possession of the property and issued a writ of restitution in her favor in regard to the property in Colfax County. The district court for Colfax County affirmed the county court's decision, finding that the lease had expired and that neither party had taken any action to extend the lease.

On appeal, the Court of Appeals first determined that the farm lease at issue was governed neither by the Uniform Residential Landlord and Tenant Act (URLTA), as it existed on March 25, 1990, Neb. Rev. Stat. §§ 25-21,219 (Reissue 1989) and 76-1401 to 76-1449 (Reissue 1990), nor by the forcible entry and detainer statutes, Neb. Rev. Stat. §§ 25-21,219 to 25-21,235 (Reissue 1989). The court instead determined the case based upon common law. *Stuthman v. Stuthman*, 2 Neb. App. 173, 507 N.W.2d 674 (1993).

Citing Restatement (Second) of Property § 12.3, comment *k*. (1977), the Court of Appeals related that "[t]here is authority for the proposition of law that negotiations for a new lease may give rise to a finding that the continuation by the tenant of his occupation of the leased property is with the landlord's consent." *Stuthman*, 2 Neb. App. at 177, 507 N.W.2d at 676. The Court of Appeals found that a factual question existed as

to whether the tenant had continued to be recognized as a tenant after the lease terminated. If he was recognized as a tenant, then a year-to-year tenancy would be presumed and 6 months' notice to terminate would be required. The Court of Appeals reversed the district court's order and remanded the cause to the district court with direction to remand the cause to the county court for a determination of whether the tenant was a holdover tenant. The landlord then petitioned for and was granted further review by this court.

## ASSIGNMENTS OF ERROR

The landlord claims that the Court of Appeals erred in (1) holding that a farm lease is not governed by the forcible entry and detainer statutes and (2) remanding the cause for a determination of whether the tenant was a holdover tenant.

## STANDARD OF REVIEW

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Rigel Corp. v. Cutchall, ante* p. 118, 511 N.W.2d 519 (1994); *In re Application of Jantzen, ante* p. 81, 511 N.W.2d 504 (1994).

In an appeal from a county court's judgment rendered in a bench trial of a law action, an appellate court conducts a review for error appearing on the record made in the county court. See, *Nelson-Holst v. Iverson*, 239 Neb. 911, 479 N.W.2d 759 (1992); *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990). See, also, § 25-21,233 and Neb. Rev. Stat. § 25-2733(1) (Reissue 1989). Furthermore, in a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. See *Barnes v. Davitt*, 160 Neb. 595, 71 N.W.2d 107 (1955) ("clearly erroneous" standard applied in review of forcible entry and detainer actions). Accord *Mathiesen v. Bloomfield*, 184 Neb. 873, 173 N.W.2d 29 (1969).

## ANALYSIS

### FORCIBLE ENTRY AND DETAINER STATUTES

On appeal to the Court of Appeals, the tenant essentially

argued that because his lease is a farm lease, URLTA as it existed on March 25, 1990, was inapplicable to his case, and that therefore the county court lacked jurisdiction. The landlord agrees that URLTA does not apply to farm leases, but argues that the forcible entry and detainer statutes do apply to farm leases and that those statutes provide the county court with jurisdiction over this case.

In finding that the forcible entry and detainer statutes do not apply to farm leases, the Court of Appeals relied on § 76-1408 of URLTA. Section 76-1408 provides: "Unless created to avoid the application of sections *25-21,219* and 76-1401 to 76-1449, the following arrangements are not governed by sections *25-21,219* and 76-1401 to 76-1449: . . . (7) Occupancy under a rental agreement covering premises used by the occupant primarily for agricultural purposes." (Emphasis supplied.) The Court of Appeals held that § 76-1408 explicitly excludes farm leases not only from URLTA, but also from § 25-21,219, which grants jurisdiction to the district and county courts over forcible entry and detainer proceedings.

An examination of the forcible entry and detainer statutes, URLTA, and their legislative histories shows that excluding farm leases from the forcible entry and detainer statutes is inconsistent with the purposes of those statutes. In 1974, the Legislature enacted URLTA. See 1974 Neb. Laws, L.B. 293. Section 8 of L.B. 293, which became § 76-1408 of URLTA, originally stated: "Unless created to avoid the application of *this act*, the following arrangements are not governed by *this act.*" (Emphasis supplied.) When the statute was published, the Revisor of Statutes changed "this act" to read "sections *25-21,219* and 76-1401 to 76-1449." (Emphasis supplied.) Sections 76-1401 to 76-1449 constitute Nebraska's URLTA. The inclusion by the Revisor of Statutes of § 25-21,219 as part of URLTA apparently occurred by mistake.

L.B. 293 stated that one of its purposes was "to amend section 24-568," which later became § 25-21,219. This reference to § 24-568 (§ 25-21,219) apparently caused the Revisor of Statutes to mistakenly cite that section, along with §§ 76-1401 to 76-1449, in designating URLTA. See § 76-1401.

The Legislature's intent that § 25-21,219 *not* be included in

URLTA can further be determined by how L.B. 293 amended § 24-568 (§ 25-21,219). That amendment stated: "This section [§ 24-568 (§ 25-21,219)] shall not apply to actions for possession of any premises subject to the provisions of the Uniform Residential Landlord and Tenant Act." Thus, the only reason the Legislature referred to § 24-568 (§ 25-21,219) in URLTA at all was to differentiate the proceedings governed by URLTA from those governed by the forcible entry and detainer statutes. In light of this amendment, it would be inconsistent to include § 25-21,219 as part of URLTA.

We also note that the Legislature corrected this error in 1991 when it eliminated § 25-21,219 from the designation of URLTA in § 76-1401. See 1991 Neb. Laws, L.B. 324; § 76-1401 (Cum. Supp. 1992).

This court addressed a similar situation in *State v. Karel*, 204 Neb. 573, 284 N.W.2d 12 (1979). In *Karel*, the court determined that when publishing a comprehensive Nebraska Rules of the Road bill, the Revisor of Statutes had substituted certain specific statutory sections for the words "this act." This substitution had erroneously resulted in the charge of first-offense drunk driving being classified as a traffic infraction, for which a defendant would not be entitled to a jury trial, rather than as a misdemeanor, for which a defendant would be entitled to a jury trial.

The court in *Karel* noted that under Neb. Rev. Stat. § 49-705(1) (Reissue 1988), the Revisor of Statutes had the authority, in preparing supplements and reissued or replacement volumes of the Revised Statutes, to renumber and rearrange sections. However, section 49-705(1) also makes clear that any such changes made by the Revisor of Statutes cannot change the substantive meaning of any statute as enacted by the Legislature. Because the Revisor's substitution changed the meaning of the Nebraska Rules of the Road bill, the *Karel* court held that first-offense drunk driving was not a traffic infraction and that the defendant in that case was entitled to a jury trial.

Similarly, in publishing URLTA, the Revisor of Statutes substituted specific statutory sections for the words "this act." In doing so, the Revisor impermissibly changed the meaning of URLTA and the forcible entry and detainer statute. See

§ 49-705(1). Therefore, we find that Nebraska's forcible entry and detainer statutes do apply to farm leases, and we reverse the decision of the Court of Appeals on this issue. See *Otto v. Hongsermeier Farms,* 217 Neb. 45, 348 N.W.2d 422 (1984) (appeal of judgment in forcible entry and detainer proceedings involving farmland).

### Year-to-Year Tenancy

The Court of Appeals first found that the tenant and landlord had entered into negotiations before the lease terminated and that the tenant had remained on the property after the lease terminated. The Court of Appeals then found that a factual question existed as to whether the tenant had continued to be recognized by the landlord as a tenant after the lease terminated, or in other words, whether the landlord had consented to the tenant's holding over, thereby creating a year-to-year tenancy for which 6 months' notice to terminate would be required. The Court of Appeals erred in making this finding and in remanding the cause on that basis.

The Court of Appeals stated that authority exists to support the proposition that negotiations for a new lease may give rise to a finding that a tenant's continued occupation of leased property after termination of the lease is with the landlord's consent. For this proposition, the Court of Appeals cited comment *k.* to the Restatement (Second) of Property § 12.3 (1977), a section dealing with the time within which a vacating tenant must restore leased property to its former condition or remove annexations. Comment *k.* states:

> If the tenant remains on the leased property after the termination of the lease *with the consent of the landlord,* the lease is not terminated for the purposes of this section *until the consent is withdrawn....*
>
> The usual situation that gives rise to the continuation by the tenant of his occupation of the leased property with the landlord's consent is where they enter into negotiations for a new lease and the negotiations have not resulted in an agreement by the time the original lease ends. The tenant continues his occupancy of the leased property *with the acquiescence of the landlord,* and some time later the

negotiations collapse and the landlord orders the tenant to vacate the leased property.

(Emphasis supplied.)

While comment *k.* suggests that a landlord may allow a tenant to remain on the property during negotiations for a new lease, the reverse of that suggestion is that *the landlord can withdraw that consent* and order the tenant to vacate the leased property when the negotiations fail.

We have not been cited to any cases dealing with the effect of negotiations on the status of a tenant who holds over after the expiration of a *farm* lease, nor has our research disclosed any such cases. With regard to other types of leases, courts have stated generally that when a tenant remains in possession of leased property after the expiration of his lease, but at the same time negotiates with the landlord for a new lease, *such negotiations negate the possibility of any acquiescence or election by the landlord to create a holdover tenancy*. See, e.g., *Masterson v. DeHart Paint & Varnish Co.*, 843 S.W.2d 332 (Ky. 1992); *Ebert v. Dr. Scholl's Foot Comfort Shops*, 137 Ill. App. 3d 550, 484 N.E.2d 1178 (1985); *Potter v. Henry Field Seed Co.*, 239 Iowa 920, 32 N.W.2d 385 (1948).

No cases have been cited to us nor have we found where this court has determined the effect in Nebraska of negotiations on the status of a tenant holding over after the expiration of the tenant's lease. We have held, however, that when farmland is leased to a tenant for 1 year for a stipulated rent reserved, and after the expiration of the lease, the tenant, without further contract, remains in possession and *is recognized as a tenant by the landlord* in the receipt of rent for another year, this will create a tenancy from year to year. See *Moudry v. Parkos*, 217 Neb. 521, 349 N.W.2d 387 (1984). This court has also held that a holdover tenancy upon the same conditions as specified in the original lease may be created when, after a year lease has ended and without further agreement, the tenant remains in possession and is recognized by the landlord by receiving rent or in any other way, showing that both parties regard the relation of landlord and tenant as still continuing. See *Otto v. Hongsermeier Farms*, 217 Neb. 45, 348 N.W.2d 422 (1984). Only a presumption of a tenancy from year to year arises from

such a holding over, and the presumption is rebuttable by proof of a different agreement or of facts inconsistent with the presumption. *Barnes v. Davitt*, 160 Neb. 595, 71 N.W.2d 107 (1955).

Generally, in Nebraska, in the absence of any different agreement, a yearly lease of farmland begins on March 1 and ends on February 28 of the succeeding year. *Moudry, supra.* In this case, the lease was not for a full year, but for a term approximately 24 days less than a year. When a lease is for less than a year and a tenant holds over with the landlord's consent, a holdover tenancy for the same duration as the original lease is usually created. See *Otto, supra.*

We need not address what the duration of any holdover tenancy would have been in this case. That is because the evidence is uncontroverted that the landlord never intended or agreed to create a holdover tenancy in regard to the same property that was covered in the original lease. Although the tenant attempted to negotiate a renewal lease with the landlord, the landlord steadfastly refused to rent to the tenant for another term the 135 acres of cropland covered by the March 25, 1990, lease. Instead, the landlord offered to rent to the tenant only some of the same property involved in the March 25, 1990, lease. The landlord's desire to rent to the tenant only some of the same property was communicated to the tenant (1) by the landlord in a letter to the tenant dated September 7, 1990, (2) by her farm manager's offer of the new lease sent to the tenant the day before the original lease expired, and (3) by the landlord's attorney in a letter to the tenant dated April 23, 1991.

The landlord's communications, which uniformly excluded the cropland, show that the landlord did not want the tenant to rent for another term on the same terms as specified in the original lease. The record contains no evidence of a different agreement between the parties, nor does it contain evidence that the landlord accepted rent or that the tenant ever attempted to pay the landlord rent for another term.

The evidence is uncontroverted that the tenant was unsuccessful in negotiating a new lease and that the landlord offered the tenant a lease for less property than was covered by the March 25, 1990, lease. This evidence negates the tenant's

claim that the landlord had acquiesced or consented to a holdover tenancy for another term, which, by operation of law, would have been upon the same terms and conditions as specified under the original lease.

From these facts, the county court properly found that the tenant was *unlawfully and forcibly* holding over his tenancy and that the landlord was entitled to regain possession of her property in Colfax County. Implicit in these findings is the county court's determination that the landlord had not, through negotiations or otherwise, recognized the tenant as a holdover tenant or consented to the tenant's holding over. The county court was not clearly wrong in finding for the landlord upon her forcible entry and detainer petition or in granting the landlord a writ of restitution to her Colfax County property. Thus, the Court of Appeals erred in remanding the cause for further proceedings.

## CONCLUSION

We hold that Nebraska's forcible entry and detainer statutes do permit a landlord to evict a tenant who unlawfully and forcibly detains farmland after the tenant's lease has expired.

We, therefore, reverse the decision of the Court of Appeals and remand the cause to that court with direction to affirm the judgment of the district court which affirmed the judgment of the county court in favor of the landlord.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., not participating.