IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KRAMER RANCH CO. V. KRAMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KRAMER RANCH CO., APPELLEE,

V.

BRUCE KRAMER, APPELLANT.

Filed July 8, 2025.    No. A-24-594.

Appeal from the District Court for McPherson County: CINDY R. VOLKMER, Judge. Affirmed.

George G. Vinton for appellant.

Joshua J. Wendell, of McQuillan & Wendell, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Kramer Ranch Co. (Kramer Ranch) filed a complaint for forcible entry and detainer, seeking restitution of premises leased to Bruce Kramer. Bruce then filed a complaint against Kramer Ranch, alleging various causes of action as well as a motion for temporary injunction to enjoin Kramer Ranch from seeking an order of restitution. The McPherson County District Court consolidated the cases and treated Bruce's causes of action in his complaint as counterclaims in the eviction action. Following a bench trial, the McPherson County District Court entered an order of restitution for Kramer Ranch and denied Bruce's motion for a temporary injunction. For the reasons set forth herein, we affirm.

- 1 -

STATEMENT OF FACTS

Kramer Ranch is a family corporation, of which Bruce is a 6.8 percent owner. Since 1986, Bruce has leased approximately 7,500 acres of land in McPherson and Hooker Counties from Kramer Ranch, often through oral leases. In June 2023, Bruce and Kramer Ranch engaged in lengthy negotiations for a written lease to commence May 1, 2023, and end April 30, 2024. Relevant to this appeal, the lease agreement provided:

[Term] 3.2. This Agreement shall not automatically renew. There shall be no oral renewal, extension, or any other modification to this Agreement. All renewal, extension, or other modifications must be in writing and signed by the parties hereto. No writing by [Kramer Ranch] shall be binding upon [Kramer Ranch] until an officer of [Kramer Ranch] has been given authorization to enter into such a writing by the Board of Directors of [Kramer Ranch].

. . . .

[Term] 26.1 [Bruce] and [Kramer Ranch] shall use good faith efforts to negotiate another lease agreement prior to the termination of the term of this Agreement. If good faith negotiations do not result in a new lease agreement on or before February 1, 2024, then the termination date of May 1, 2024[,] may be enforced by [Kramer Ranch].

[Term] 26.2. There are no conditions precedents to the effectiveness of this Agreement other than those expressly stated in this Agreement.

In July 2023, the parties entered into a settlement agreement, which included a statement that the agreement was intended as a global settlement of all disputes between the parties, including any prior lease agreements. The settlement agreement included a provision, like the one discussed above, requiring the parties to use good faith efforts to negotiate another lease agreement.

At the end of the lease term, Bruce refused to vacate. He believed that the lease continued for another year because no one negotiated in good faith with him. Kramer Ranch served a notice to vacate, but Bruce remained on the premises.

On May 24, 2024, Kramer Ranch filed a complaint for forcible entry and detainer, seeking restitution of the premises. The case was docketed as "CI 24-5." Bruce filed a complaint on June 10 against Kramer Ranch and others, docketed as "CI 24-6," alleging three causes of action. The first cause of action was titled "breach of agreement" and alleged that Kramer Ranch failed to use good faith in negotiating another lease agreement. Bruce alleged that the language of the lease agreement required the parties to use good faith efforts to negotiate another lease. For this cause of action, Bruce requested relief preventing Kramer Ranch from attempts to retake possession of the ranch and causing the 2023-2024 lease to carry over to 2024-2025. Bruce's second cause of action alleged that one of the shareholders was unduly influenced in his vote and sought to invalidate his vote relating to terminating Bruce's lease. In his third cause of action, Bruce requested that the district court enter a temporary restraining order enjoining Kramer Ranch from retaking possession of the leased premises by self-help or through judicial means, enter a temporary injunction enjoining Kramer Ranch from attempting to retake possession of the leased premises during the pendency of the action and, upon trial, enter a permanent injunction enjoining Kramer Ranch from retaking possession of the leased premises. That same day, Bruce also filed a

separate motion requesting that an ex parte temporary restraining order be entered if counsel for Kramer Ranch could not be contacted, and that upon hearing, a temporary injunction be issued by the court enjoining Kramer Ranch from seeking restitution of the leased premises. After the other parties (except Kramer Ranch) were dismissed from CI 24-6, the court consolidated the cases and considered CI 24-6 to be counterclaims in CI 24-5. A 2-day bench trial occurred on June 20 and June 26. Conflicting evidence was adduced regarding the parties' efforts to negotiate another lease agreement.

On July 10, 2024, the district court entered an order of restitution of premises. The district found that Kramer Ranch had met its burden to be granted restitution of the leased premises. The court noted that in the separate case Bruce had filed a request for temporary injunction against Kramer Ranch and, following consolidation of the two cases, Bruce's complaint requesting a temporary injunction against Kramer Ranch was now considered a counterclaim in the case at issue. The court rejected Bruce's claims of breach of good faith and undue influence, finding that Bruce was therefore not entitled to a temporary injunction. With regard to Bruce's "good faith negotiations defense," the court rejected Bruce's claim that paragraph 26.1 acted as a condition precedent to the termination of the 2023 lease, as that paragraph did not trigger any further duty by either party.

The district court gave Kramer Ranch 30 days to file an answer in CI 24-6, "which is considered a Counterclaim in the above captioned matter." The district court entered an amended order on July 18, which is identical to the July 10 order but added a legal description of the real estate.

On July 17, 2024, Bruce moved for entry of a final judgment under Neb. Rev. Stat. § 25-1315(1) (Reissue 2016), referring to the district court's grant of 30 days to Kramer Ranch in which to file an answer. The motion alleged that the district court's order for restitution was a final order as "it is an ultimate disposition of not only the Forcible Entry and Detainer Action but also the Injunction Action filed by Bruce since the remedy sought by Bruce in his counterclaim is to stay in possession of the real estate when a counterclaim is filed by the Defendant." The motion requested an express direction for the entry of judgment and a statement that there is no just reason for delay. The same day, Bruce filed a motion for order setting supersedeas bond.

On July 24, 2024, the district court entered an order addressing Bruce's motion for entry of final judgment and motion for order setting supersedeas bond. The court specifically cited to § 25-1315 and explained that the matter is the result of two consolidated cases. The court noted that it had previously granted Kramer Ranch a writ of restitution and denied Bruce's request for a temporary injunction. The court then discussed *TDP Phase One v. The Club at the Yard*, 307 Neb. 795, 950 N.W.2d 640 (2020), and the interplay with Neb. Rev. Stat. § 25-21,233 (Reissue 2016) which grants the ability to appeal a judgment in an action for forcible entry and detainer. The court concluded that the issues presented to it were that of possession of the real property and a temporary injunction preventing Kramer Ranch from taking possession of the real property. The court found its order issued on July 18 affected a substantial right in the action (possession of the real property) and affected Bruce's claims that may then prevent a judgment. Therefore, the district court found its July 18 order was a final judgment on the issue of possession of the real property.

The district court directed the district court clerk to enter judgment on the issue of possession in favor of Kramer Ranch. The court also specifically found "that there is no just reason

- 3 -

for delay on the ability to appeal and, to the extent granted in § 25 1315, grants Bruce Kramer the right to appeal the final order issued on July 18, 2024." Finally, the district court set the supersedeas at $45,634.10 payable every 6 months, based upon the rent amount for the 2023-2024 lease (with a small additional amount for costs of the action). The supersedeas is due December 1 and May 1 each year until the appeal is completed. Failure to pay cash or a surety undertaking as specified shall result in a writ of restitution being issued immediately.

On August 8, 2024, Bruce filed a notice of appeal stating his intention to appeal from the July 10 order as amended by the July 18 order, and the July 24 order. On the same day, Kramer Ranch filed a motion for a progression order on the issues remaining after entry of the July 24 order. In an August 20 journal entry, the district court noted that Bruce had moved to "dismiss the second cause of action, and the third cause of action both without prejudice, of Defendant's counter claim." Kramer Ranch did not object. Additionally, both parties agreed that there are no more "pending matters" before the district court. The court dismissed Bruce's second and third cause of action of his counterclaim (the undue influence and injunction actions), without prejudice, and found that there were no more pending matters before the court while the appeal of the order granting restitution to Kramer Ranch was pending. Generally, appellate jurisdiction cannot be created by voluntary dismissals without prejudice of unresolved claims. See *Clason v. LOL Investments*, 316 Neb. 91, 3 N.W.3d 94 (2024). However, Bruce agreed that these causes of action no longer had merit given the court's order of restitution.

## ASSIGNMENTS OF ERROR

Bruce assigns that the district court erred in (1) failing to dismiss Kramer Ranch's complaint for forcible entry and detainer as it failed to properly serve a notice to leave premises pursuant to Neb. Rev. Stat. § 25-21,221 (Reissue 2016) and (2) failing to find that the language in the lease agreement requiring the parties to use good faith efforts to negotiate another lease was a condition precedent to Kramer Ranch's enforcement of the termination date of the lease.

At oral argument, Bruce asserted a new argument; that the district court lacked subject matter jurisdiction due to the existence of a title dispute within the forcible entry and detainer action.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Enterprise Bank v. Knight*, 20 Neb. App. 662, 832 N.W.2d 25 (2013). See *Barnes v. Davitt*, 160 Neb. 595, 71 N.W.2d 107 (1955) (clearly erroneous standard applied in review of forcible entry and detainer actions). Accord *Mathiesen v. Bloomfield*, 184 Neb. 873, 173 N.W.2d 29 (1969).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Enterprise Bank v. Knight, supra*.

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue. *Ryan v. Ryan*, 313 Neb. 938, 987 N.W.2d 620 (2023).

ANALYSIS

*Subject Matter Jurisdiction.*

Raised for the first time at oral argument, Bruce contends that the district court lacked subject matter jurisdiction because this case presented a title dispute concerning the ranch. The lack of subject matter jurisdiction can be raised at any time by any party or by the court sua sponte. *Parish v. Parish*, 314 Neb. 370, 991 N.W.2d 1 (2023). Subject matter jurisdiction is a question of law. See *Woodsonia Hwy 281 v. American Multi-Cinema*, 318 Neb. 592, 17 N.W.3d 780 (2025).

We begin with a review of our forcible entry and detainer jurisprudence. Forcible entry and detainer actions are special statutory proceedings designed to provide a speedy and summary method by which the owner of real estate might regain possession of it from one who had unlawfully and forcibly entered into and detained possession thereof, or one who, having lawfully entered, then unlawfully and forcibly detained possession. See *Woodsonia Hwy 281 v. American Multi-Cinema, supra*. Given the limited scope of forcible entry and detainer, when a court hears such an action, it sits as a special statutory tribunal to summarily decide the limited issues authorized by statute and does not have the power to hear and determine other issues. *Id*. Further, the Nebraska Supreme Court has held for well over a century that a court cannot determine a question of title in a forcible entry and detainer action; if the resolution of the case would require the court to determine a title dispute, it must dismiss the case for lack of jurisdiction. See, *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 667 N.W.2d 538 (2003); *Woodsonia Hwy 281 v. American Multi-Cinema, supra*.

When a forcible entry and detainer action is ongoing, the mere averment that title is in dispute does not automatically divest the court of jurisdiction. See *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014). Instead, the court may proceed until the evidence discloses that the question involved is one of title. *Id.* A court cannot determine that title is in dispute based solely on the pleadings, claims, or pretensions of the parties. *Id.*

Bruce relies on *Woodsonia Hwy 281 v. American Multi-Cinema, supra*, a forcible entry and detainer action where an evicted commercial tenant appealed from a writ of restitution entered by the county court and affirmed by the district court. In *Woodsonia Hwy 281*, a company owned and operated a retail shopping mall and leased space in the shopping mall to a movie theatre. The company agreed to sell the shopping mall before the movie theatre's commercial lease had expired. The buyer of the shopping mall, Woodsonia, planned to redevelop the shopping mall property using tax increment financing. In furtherance of this redevelopment plan, Woodsonia successfully negotiated the termination of most of the leases in the shopping mall, with the exception of the movie theatre and a few other tenants. The lease between the previous owner and the movie theatre contained a paragraph that generally provided that if the premises was taken in eminent domain, or conveyed under threat of condemnation proceedings, then the lease terminated. The lease further provided that the landlord may agree to sell or convey the premises or any portion thereof to the condemnor, at which time the lease would be deemed terminated on the date of the transfer. The City of Grand Island's Community Redevelopment Authority (CRA) adopted a resolution that if Woodsonia was unable to reach a workout regarding the termination of the leases, the CRA would begin the negotiations and process of exercising its eminent domain powers to take and terminate the leasehold interests.

Woodsonia notified the movie theatre that its leasehold interest had been transferred to the CRA and terminated. Woodsonia then served the movie theatre a 3-day notice to quit and later filed a forcible entry and detainer action. At trial, Woodsonia maintained that the eminent domain provisions gave it the right to convey the movie theater's leasehold interest to the CRA under threat of condemnation and thereby terminate the lease, and that Woodsonia exercised that right. Thus, Woodsonia claimed that it was entitled to immediate possession of the leased premises. The county court agreed and rejected the movie theater's argument that the case presented a title dispute because the conditions precedent to termination under the eminent domain provisions of the lease had not been met and thus, there was a dispute over whether the lease had been validly terminated or was still in full force and effect.

On appeal, the Nebraska Supreme Court concluded that Woodsonia's forcible entry and detainer complaint necessarily required judicial resolution of a title dispute concerning the continued validity of the movie theatre's leasehold interest. The court noted that for the trial court to determine whether Woodsonia was entitled to immediate possession, it would first need to decide whether the theater's leasehold interest had been validly terminated, which in turn would require the court to decide whether certain automatic provisions in the lease were both triggered and satisfied. Although the lower courts believed that Woodsonia had sufficiently proven that under the eminent domain provisions of the lease, the theater's leasehold interest was validly conveyed by Woodsonia to the CRA and thereby terminated, the Supreme Court found that "it is immaterial whether a court thinks the evidence is sufficient to resolve a title dispute in a forcible entry and detainer action, because it plainly lacks jurisdiction to do so." *Woodsonia Hwy 281 v. American Multi-Cinema*, 318 Neb. at 610, 17 N.W.3d at 792. The court recognized that a lease and possession constitute an interest in real estate and that a tenant has a "possessory title while his [or her] lease remains in force." *Id*. at 611, 17 N.W.3d at 793. And, whether an owner's title is encumbered by a lease is a question bearing on title. The court concluded that "a forcible entry and detainer action is not the proper action to resolve a contract dispute between a landlord and tenant -- even one that is 'simple.'" *Id*. at 612, 17 N.W.3d at 792. The court held, therefore, that both the county court and district court lacked subject matter jurisdiction over the action, and they erred in failing to dismiss the action.

In the case at hand, Bruce argues that the question of whether his lease with Kramer Ranch was properly terminated, similar to the issue in *Woodsonia*, created a question of title as it related to Kramer Ranch's right to immediate possession of the premises. He relies upon the language of the lease which required good faith negotiations for another lease agreement, which he claimed did not occur, and which he claims should result in the extension of the lease for another year. The district court rejected Bruce's claim that good faith negotiations was a condition precedent to the termination of the 2023 lease and that under the language of the lease, there was no further duty triggered by paragraph 26.1. Thus, the court found that Bruce's defense to the termination of the lease was not proven.

The question which must be resolved is whether the contractual claim alleged by Bruce was sufficient to raise a title dispute within the forcible entry and detainer action. As noted by the Supreme Court in *Woodsonia*, a forcible entry and detainer action is not the proper action to resolve a contractual dispute. However, in that case, there was a dispute about whether the eminent domain provision of the lease had been triggered by the alleged transfer to the CRA under threat of

condemnation such that Woodsonia could terminate the lease, which had not yet expired. The Supreme Court determined that a title question existed because the court could not determine if Woodsonia had an immediate right to possess the property unless it first resolved the dispute over whether the lease had been validly terminated or was still in force and effect.

In the case at hand, the plain language of the lease agreement provided that the 2023-2024 lease expired on April 30, 2024. The lease specified that there was no automatic renewal and there was no provision for the lease to extend if good faith negotiations did not occur. The lease clearly provided that it expired on April 30, at which time Kramer Ranch was entitled to possession. Only if the parties negotiated in good faith a new lease would Bruce retain a right of possession. Whether good faith negotiations occurred or not, it is clear from the record that no new lease agreement was made for the 2024-2025 year and as of May 1, 2024, Kramer Ranch was entitled to immediate possession of the premises. Thus, following May 1, 2024, Bruce had no right to possession of the premises and his claim regarding the lack of good faith negotiations did not create a title dispute within the forcible entry and detainer action.

Although not exactly on point, we note that the case of *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015), is instructive. In that case, the parties had a 5-year lease at a specified rental rate, but which lease contained a provision that an annual review of the rental rate and terms would be performed each year. The lessor brought a declaratory judgment action claiming that the lessee refused to negotiate in good faith the terms for the third year of the lease, and were farming the property at a rental rate that was not fair and reasonable. The district court rejected the lessor's argument that the review provision of the lease created an ambiguity and found that the lease was valid at the rental rate set forth, and that the tenants were not under an obligation to agree to alter the terms. On appeal, the Nebraska Supreme Court agreed, finding that the review provision did not specify the consequence of the parties' failure to reach an agreement on the rental rate and terms. See, also, *T.V. Transmission v. City of Lincoln*, 220 Neb. 887, 892, 374 N.W.2d 49, 53 (1985) (provision to review and adjust rental rate nothing more than "agreement to agree in the future" is unenforceable).

Similar to the above cases, the provision to negotiate in good faith in the lease at issue here does not specify the consequence of the parties' failure to negotiate in good faith; and as such, is ineffective to create in Bruce any possessory right to the property beyond the date of termination. The lease terminated on April 30, 2024, and thereafter Bruce was not entitled to possession of the premises. Since Bruce had no legal or equitable right to the property at that time, the issue of title was not drawn in question and the district court could determine that Bruce unlawfully detained possession without having to determine a question of title. See, *Woodsonia Hwy 281 v. American Multi-Cinema, supra*; *Gregory v. Pribbeno*, 143 Neb. 379, 9 N.W.2d 485 (1943). See, also, *Stuthman v. Stuthman*, 245 Neb. 846, 515 N.W.2d 781 (1994) (forcible entry and detainer statutes permit landlord to evict tenant who unlawfully and forcibly detains farmland after tenant's lease expired).

We conclude that there was no title dispute involved in this forcible entry and detainer action and that the district court properly exercised its subject matter jurisdiction.

*Appellate Jurisdiction.*

To be appealable, an order must satisfy the final order requirements of Neb. Rev. Stat. § 25-1902 (Reissue 2016) and, where implicated, § 25-1315(1). See *Ryan v. Ryan, supra*.

This court performed a jurisdictional review and on September 3, 2024, we directed the parties to address in their briefing whether the district court's order was properly certified. However, at the time we issued this order, we did not yet have the supplemental transcript containing the August 20 order of the district court which dismissed the second and third causes of action and found that the only issues remaining in the case were Kramer Ranch's entitlement to restitution of the premises and Bruce's claim that Kramer Ranch breached an agreement to negotiate an extension of the lease in good faith. As a result of the district court's order of restitution and rejection of Bruce's claim that Kramer Ranch's alleged breach precluded it from terminating the lease, the parties agreed that all issues in the case had been resolved.

As the case stands now, we have a final appealable order, and we need not address whether the district court properly certified its order under § 25-1315(1).

*Proper Notice Under § 25-21,221.*

Bruce asserts that Kramer Ranch failed to serve him a notice to leave premises as required by § 25-21,221, and therefore the district court should have dismissed Kramer Ranch's forcible entry and detainer action.

Section 25-21,221 provides:

It shall be the duty of the party, desiring to commence an action under sections 25-21,219 to 25-21,235, to notify the adverse party to leave the premises for the possession of which the action is about to be brought. This notice shall be served at least three days before commencing the action by leaving a written copy with such adverse party, or at his usual place of abode, if he cannot be found. Where the defendant or his usual place of abode cannot be found in the county where the premises are located, such notice may be served by leaving such notice at or posting it on the detained premises.

The 3-day notice or "notice to quit" is necessary to obtaining an order of restitution in a forcible entry and detainer action. See *I.P. Homeowners v. Morrow*, 12 Neb. App. 119, 668 N.W.2d 515 (2003).

Kramer Ranch's complaint alleged that service of the "written Notice to Vacate" was served by the McPherson County Sheriff on May 3, 2024. Attached to Kramer Ranch's complaint was a copy of the Sheriff's service return, which indicated that Bruce was served by service on his wife at his home. Bruce did not file an answer to Kramer Ranch's original complaint and therefore, this allegation of service has not been denied by Bruce.

During trial, Bruce did not allege any defects in the service of the notice and no testimony regarding service was adduced. A "Notice to Leave Premises" was received into evidence without objection. The notice, dated May 1, 2024, stated that the lease between Bruce and Kramer Ranch had expired on April 30. The notice referenced § 25-21,221 and provided Bruce with 3 days to return the leased premises before Kramer Ranch would file a court action. The notice was attached to an affidavit authored by counsel for Kramer Ranch. The complaint was filed by Kramer Ranch on May 24, more than 3 days after the notice was served.

Additionally, counsel's affidavit stated, "I received a return of civil process from the McPherson County Sheriff's Office indicating a copy of the Notice to Leave Premises was served on the Defendant[.]" Another copy of the service return, identical to the one which was attached to Kramer Ranch's complaint, was attached to counsel's affidavit. Bruce's testimony at trial confirmed that the address listed on the service return was his home address.

Now on appeal, Bruce argues for the first time that strict adherence to the forcible entry and detainer statutes is required. He contends that because § 25-21,221 requires service at "his usual place of abode, if he cannot be found," Bruce was not properly served as there was no evidence in the record demonstrating why service was not perfected on Bruce himself. Bruce cites to *I.P. Homeowners v. Morrow*, where this court recognized that because a forcible entry and detainer action to recover possession of real property is a creature of statute, there must be strict adherence to the statutory requirements. See *I.P. Homeowners v. Morrow, supra* (citing 35A Am.Jur.2d *Forcible Entry and Detainer* § 3 at 1038 (2001)).

Bruce did not raise any issue regarding the sufficiency of service under § 25-21,221 before the district court. An appellate court will not consider an argument or theory that is raised for the first time on appeal. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021). Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.*

We recognize that the appellant in *I.P. Homeowners v. Morrow* also failed to raise any issue regarding the sufficiency of service under § 25-21,221 before the trial court. However, we concluded under plain error review that the record in that case contained no evidence that a notice to quit as required by § 25-21,221 was ever served.

Here, there was evidence that the notice to leave premises was served on May 3, 2024, at Bruce's home address. Therefore, there was no plain error regarding the notice and the district court did not err in failing to dismiss Kramer Ranch's complaint for forcible entry and detainer.

*Breach of Agreement Claim Moot.*

In Bruce's complaint (treated as a counterclaim to Kramer Ranch's complaint), his claim of breach of agreement to negotiate in good faith only requested that Kramer Ranch be prevented from retaking possession of the property and that the 2023-2024 lease be carried over to 2024-2025. However, the 2024-2025 lease would have expired on April 30, 2025. Therefore, any issue related to Bruce's first cause of action has become moot. See *City of Hastings v. Sheets*, 317 Neb. 88, 8 N.W.3d 771 (2024) (mootness refers to events occurring after filing of suit that eradicate requisite personal interest in dispute's resolution that existed at beginning of litigation).

CONCLUSION

The district court had subject matter jurisdiction to decide this forcible entry and detainer action. We find that Bruce did not preserve his claim that Kramer Ranch failed to properly serve a notice to leave premises pursuant to § 25-21,221 for appeal; further, the record shows no error with respect to the notice. Additionally, Bruce's claim of breach of agreement to negotiate in good

faith is moot as the lease term at issue had expired by the time of the resolution of the appeal. We affirm the district court's order of restitution of premises for Kramer Ranch.

AFFIRMED.