CHARLES T. KNAPP, APPELLEE, v. JOHN S. REED, APPELLANT.

FILED MARCH 16, 1911. No. 16,335.

1. **Forcible Entry and Detainer.** The right to recover possesion of real estate by an action of forcible entry and detainer is not necessarily limited to cases in which the relation of landlord and tenant exists. *Gies v. Storz Brewing Co.*, 75 Neb. 698, distinguished.

2. **Partnership: POWERS: RENEWAL OF LEASE.** When a partnership is

carrying on business in premises which it holds under a lease, neither partner can, without the consent of the other, take a renewal of the lease in his own name and so exclude the other partner and secure the good-will of the business for himself. If one partner takes such renewal, it will inure to the benefit of both partners and each will have an interest in the new lease.

3. ———:. DISSOLUTION: PARTNERSHIP RIGHTS: EQUITY JURISDICTION. Partnership is a relation of trust and confidence, and upon dissolution of the partnership, without an adjustment by the partners of their rights in the good-will of the business and in the premises which they hold under lease, it is the province of a court of equity to adjust such differences.

4. Justice of the Peace: JURISDICTION: PARTNERSHIP RIGHTS. A justice of the peace has no jurisdiction in an action of forcible entry and detainer to determine the rights of partners, upon discontinuing the partnership, in the leases which they hold or in the good-will of the partnership business.

5. Partnership: RENEWAL OF LEASE: FORCIBLE ENTRY AND DETAINER. If partners have been conducting a general real estate, brokerage and insurance business as copartners in leased premises, and one of the partners secures a renewal of the lease in his own name without the consent of the other, he cannot maintain an action of forcible entry and detainer to put the other partner out of the premises.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*Charles O. Whedon,* for appellant.

*Morning & Ledwith, contra.*

SEDGWICK, J.

The plaintiff and defendant had occupied the premises in controversy as a partnership in the name of Reed & Knapp under a lease from the owner. In the year 1908, while so occupying the premises, owing to a disagreement between them, it was found that the partnership must be dissolved, and each of the parties attempted to procure from their landlord a lease of the premises. The plaintiff, having procured such lease executed to him individually,

served notice to the defendant to quit the premises, and, he having neglected to do so, the plaintiff brought this action of forcible entry and detainer. The case, having been tried in justice court and appealed to the district court, was there tried with the jury, and verdict and judgment were directed in favor of the plaintiff. The defendant has appealed.

It appears that for some time prior to the year 1906 the defendant had been engaged in the real estate, brokerage and insurance business, and had occupied the premises under a lease with the owner. About the 1st of December, 1907, the plaintiff and defendant formed a partnership in the firm name of Reed & Knapp to continue said business, and as such partnership they leased the premises in question for the term of one year from the 1st day of December, 1907. In the spring of 1908 their landlord agreed to repair the office room by putting a steel ceiling thereon, and to renew their lease for three years from the date at which it expired according to its terms. The plaintiff testifies that this was upon condition that the partnership should paint the ceiling, and that they did perform this condition at the expense of the partnership of $25. The defendant testifies that the painting of the ceiling was optional with the partnership, and that after it was put on the partnership did cause the ceiling to be painted at the expense of from $12 to $25. Soon afterwards disagreements arose between the parties, and before the termination of the lease it became apparent that a dissolution of the partnership was unavoidable. On the same day each of the parties applied to the landlord for a lease of the premises, and the plaintiff finally succeeded in obtaining such lease in his individual name. The landlord, knowing of the dissension between the parties and that each partner was desirous of obtaining the possession of the premises, proposed to execute a lease to the one who would pay the largest rental. The plaintiff offered a larger rental than had been contemplated in the promise for the renewal of the lease, and he procured the lease in

his own name. The landlord for his further protection inserted the following provision in the lease which he executed to the plaintiff: "It is understood and agreed that the premises in question are now occupied by John S. Reed, and Charles T. Knapp, under a written lease from the lessor herein, which expires December 1, 1908, said lease running to John S. Reed and Charles T. Knapp, partners as Reed & Knapp; and it is also understood by the lessee herein that said John S. Reed is claiming an oral extension of said lease to Reed & Knapp, for a further period from December 1, 1908, claiming a partial performance of an agreement to extend said lease by virtue of certain repairs which said Reed & Knapp placed in said room. It is understood between the lessor and the lessee herein that the lessee, Knapp, accepts this lease with full knowledge of the above claim on the part of Reed, and accepts the same with such possession as he, the said Knapp, now has, and at his own expense, and in his own name, agrees to take such steps as he may deem proper to secure full possession thereof. In event it should be determined by court that there is in existence a valid oral lease to the firm of Reed & Knapp, then this lease shall be null and void, and lessor shall not be liable in damages to lessee by reason of the making hereof."

1. It is first contended in the defendant's brief that the action of forcible entry and detainer cannot be maintained unless the relation of landlord and tenant exists, and the case of *Gies v. Storz Brewing Co.*, 75 Neb. 698, is cited in support of that proposition. The first paragraph of the syllabus in that case is: "To authorize an action for forcible entry and detainer, the relation of landlord and tenant must be established between the plaintiff and defendant at the time the action is instituted." In that case the plaintiff was not the owner of the premises, and the question raised was whether the defendant was a tenant of the plaintiff or of the owner of the premises. It was recognized that that question must be determined as of the time when the action was begun, and the statement of

the law in the syllabus has reference to the time of the existence of the relation.   If the plaintiff obtained the right from the owner to lease the premises, and did lease them to the defendant, and so became the landlord of the defendant, and he relied upon that relation for his right to recover possession, it would be necessary for the plaintiff to prove that this condition existed at the time this action was instituted, and that was the thought that was inaccurately expressed in the paragraph of the syllabus quoted.   It was not intended to say that the action of forcible entry and detainer could not be employed except between landlord and tenant.   Sections 1019 and 1020 of the code expressly provide for several distinct cases in which the action of forcible entry and detainer may be prosecuted and in which the relation of landlord and tenant does not exist.   There is therefore no merit in the contention.

2. The controlling question in this case is as to the right of partners, upon the dissolution of a partnership, in the assets, privileges and good-will of the partnership business.   The court instructed the jury to render a verdict for the plaintiff.   If, therefore, there was evidence substantially conflicting upon a material issue, it must be considered that that issue is established by the evidence in favor of the defendant.   For the purposes of this lease, then, we must consider that the partnership obtained the verbal agreement from the landlord to renew the lease for the further term of three years and to renew the ceiling, upon the condition that the partnership should pay a part of the expense of renewing the ceiling, and that the partnership complied with that condition at the expense of $25.   The right to the renewal of the lease then became a partnership right.   It appears that this right was necessary to preserve the good-will of the business which is shown to have been valuable.   The partners had concluded to dissolve the partnership, but they had not separated, and there had not been any agreement between them in regard to the terms of the dissolution and the

right to the good-will of the business and the renewal of the lease. It is urged that this oral agreement to renew the lease for a term of three years was not valid so that it could be enforced as a legal right. It appears, however, that the landlord regarded it as valid and was ready and willing to renew the lease as he had agreed to do. It was only because of the trouble between the parties, which enabled him to exact a higher rental, that the thought occurred to him to do so. Under these circumstances could one of these parties accept a lease from the landlord for his individual use, and so obtain the good-will of the business and exclude the other party?

The defendant offered to prove that he established this business a good many years ago, and that in 1904 he employed the plaintiff, who had just finished his course in the law school, as clerk, and that later he gave the plaintiff a share of the profits of the business as compensation for his services, and still later took the plaintiff in partnership, giving him a third interest in the profits of the business, and, finally, formed a partnership with the plaintiff upon equal terms, and that during all of the time that the defendant had been in this business he had occupied the premises in question. This evidence, upon objection, was excluded by the court. In a proper action to try the rights of these parties, such evidence would appear to be material, but in this case it probably was unnecessary in view of the conditions shown by the evidence that was received. It appears that the rental of the premises had been continually $65 a month. The landlord was anxious to continue the tenancy upon those terms. He proposed a renewal of the lease for five years and for three years at that rental. There is no evidence that the use of the premises was worth more than that amount. The plaintiff, to procure this renewal of the lease, agreed with the landlord upon the rental of $1,000 a year, thereby paying a bonus of $220 for the first year to obtain this advantage. This is convincing evidence that the lease and good-will of the business were of substantial value. It must be

conceded that equity would ordinarily require that the partners should have the benefit of this value. No doubt a court of equity would have secured this benefit for the partners in a proper action at the suit of either party. As an excuse for having taken this lease in his own name to the exclusion of the defendant, the plaintiff urges that the defendant had attempted to make a similar contract in his own behalf. The defendant admitted this action on his part, and says that, because of his having established this business, and having been the leading partner while they were together, he thought he was entitled to this preference. If he was mistaken in this as a matter of law, his attempt to take what belonged to both parties did not transfer his right in the partnership to the plaintiff. The relation between partners is one of trust and confidence, and it is always held that neither can take advantage of his posession as partner to the prejudice of the partnership or any member thereof.

What, then, was the effect of the action of this plaintiff in taking this lease in his own name? This is the controlling question in this case, and we think that it is well settled by the authorities. The case of *Mitchell v. Read,* 61 N. Y. 123, was twice before the court of appeals of the state of New York, was thoroughly considered, and reviews many of the authorities. From this case it appears that there is but very little, if any, conflict in the authorities upon the general principle which must control in the case at bar. Upon its first appearance in that court it was said in the syllabus: "A lease so taken by one partner in his own name inures to the benefit of the firm, and the partner in whose name it is taken can be required to account to his copartners for its value. It is not material that the landlord would not have granted the new lease to the other partners or to the firm." The parties were copartners in conducting a hotel in the city of New York, under several leases which by their terms expired May 1, 1871. The copartnership also by its terms expired at the same time. Before the term expired the defendant

in that case, "without any notice of his intent to apply therefor, and without the knowledge of plaintiff, procured renewal leases, in his own name, of the premises for terms commencing at the termination of the partnership leases and of the partnership, which, upon discovery thereof having been made by plaintiff, defendant claimed were his property exclusively, and refused to recognize or acknowledge that the partnership or plaintiff had any right or interest therein." It will be noticed that the new term began at the expiration of the partnership and the expiration of the existing term. The plaintiff brought an action in equity to have the leases obtained by the defendant declared to have been taken for the partnership, and to have it adjudged that the defendant held them as trustee for the partnership. The lower court found that the defendant was the sole owner of the leases executed to him, and the plaintiff had no right, title or interest in them. It appears from the extract of the brief printed in the report that the plaintiff contended that the interest obtained in the lease by the defendant inured to the benefit of the firm, and that this right of the plaintiff did not depend upon whether the partnership had any right to a renewal of the lease. The defendant contended that the lease constituted no part of the good-will of the business of the partnership. The court stated the general rights of the partners in these words: "The relation of partners with each other is one of trust and confidence. Each is the general agent of the firm, and is bound to act in entire good faith to the other. The functions, rights and duties of partners in a great measure comprehend those both of trustees and agents, and the general rules of law applicable to such characters are applicable to them. Neither partner can, in the business and affairs of the firm, clandestinely stipulate for a private advantage to himself; he can neither sell to nor buy from the firm at a concealed profit to himself. Every advantage which he can obtain in the business of the firm must inure to the benefit of the firm." And then stated

the precise question before the court in these words: "It
has been frequently held that when one partner obtains
the renewal of a partnership lease secretly, in his own
name, he will be held a trustee for the firm as to the re-
newed lease. It is conceded that this is the rule where the
partnership is for a limited term, and either partner takes
a lease commencing within the term; but the contention
is that the rule does not apply where the lease thus taken
is for a term to commence after the expiration of the part-
nership by its own limitation, and whether this conten-
tion is well founded is one of the grave questions to be
determined upon this appeal." After a full discussion
of the matter, it was determined that the rule applied in
such a case. Two opinions were written, both of them
interesting, and, without repeating the reasoning at
length, we will quote briefly a few of the principles an-
nounced in the opinions that are applicable to the case
at bar: "It has long been settled by adjudications that
generally when one partner obtains the renewal of a part-
nership lease secretly, in his own name, he will be held a
trustee for the firm, in the renewed lease, and, when the
rule is otherwise applicable, it matters not that the new
lease is upon different terms from the old one, or for a
larger rent, or that the lessor would not have leased to
the firm. The law recognizes the renewal of a lease as a
reasonable expectancy of the tenants in possession, and
in many cases protects this expectancy as a thing of value.
* * * The principle which lies at the foundation of
the decision of that and all other similar cases must be the
one above stated, that the defendants in possession took
advantage of their position to procure the new lease, and
thus deprived the plaintiff of a benefit to which he, with
them, was equally entitled. * * * 'It seems to be a
universal rule that no one who is in possession of a lease,
or a particular interest in a lease, which lease is affected
with any sort of equity in behalf of third persons, can
renew the same for his own use only; but such renewal
must be construed as a graft upon the old stock.' * * *

I therefore conclude that it makes no difference that these leases were obtained for a term to commence after the partnership, by its own limitation, was to terminate. I can find no authority holding that it does, and there is no principle sustaining the distinction claimed. The defendant was in possession as a member of the firm, and the firm owned the good-will for a renewal, which ordinarily attaches to the possession. * * * The general rule is so well settled that it would be a waste of time to refer to authorities. The text-writers on the law of partnership, without exception, assert the applicability of this rule of law to partnership transactions. * * * The rule under consideration is not confined to crown, church or college leases, but embraces those of every kind. The same principle appertains to all. * * * Though this is termed a 'tenant right' as between the lessee and the landlord, that is a mere phrase. It is a hope, an expectation, rather than a right. Such as it is, the trustee shall not take it to himself, but if it results in any substantial benefit he shall hold it for his beneficiary. * * * On principle, in many cases it is of but little consequence whether the partnership is dissolved or not before the renewal, since, if the former partners become tenants in common, the result is the same."

When the case was in court the second time (84 N. Y. 556.), an additional point was stated in the syllabus, as follows: "The fact that a lease of premises, used by a firm for copartnership purposes, is to one of the copartners does not authorize him to take a renewal lease in his own name and for his own benefit; and a renewal will inure to the benefit of the firm." The principal question determined upon this second appeal of the case was whether, in an action brought by the partners who had been deprived of the benefit of the lease by the action of their copartner in taking a renewal lease in his own name, the plaintiff could recover the value of the good-will and leases as a part of the damages, and the court held that these were proper elements of damages in such an action. The

following statements of law may be found in the opinion
of the court: ¯ "It is said to-be a universal rule that, no
one who is in possession of a lease, or a particular interest
in a lease, which is affected with any sort of an equity in
behalf of third persons, can renew the same for his own
use only; but such renewal must be considered as a graft
upon the old stock.  *   *   *   That there is such a thing
as good-will, which is a matter of value in such a business,
is not to be denied, nor that it is a part of the assets of
a copartnership in that business.   Doubtless, some of it,
as is suggested by the learned counsel for the defendant,
grows from satisfaction of customers with the individuals
composing the partnership.   The manifestation of it is,
however, so much attached to the place at which the busi-
ness has been done, as that it enhances the value of the
lease of the place to the partners jointly, or to any one
of them.   Hence, it has generally been held that, where a
lease is partnership property, the good-will of the business
enters into the value of the lease, and affects the amount
of the purchase price.   The good-will of the business of
the testator and the defendant was a valuable matter in
which they had a joint interest—it was a part of their
joint property.   There could be no just and equable divi-
sion thereof between them without each got his share
thereof.   If his share was to be had by a sale of the joint
assets, that good-will must then be sold, or he would not
have his share, and to reach its full value it must go with
the lease of the place."   The court then holds that the
renewed lease for the term which carried the good-will of
the business with it ought to have been sold to the highest
bidder, the partners being allowed to bid, and the court
then used this language:   "This is criticised, for that this
suit proceeds on·the ground that the defendant had no
right to obtain the leases to himself to the exclusion of
the testator, and that, if that ground be well taken, he
would have no right to bid at the sale.   Manifestly there
is a difference between acquiring the leases from the land-
lord privily, to the wrong and harm of the cotenant and

copartner, and publicly bidding at a judicial sale of them with the sanction of the court, and on no more than equal terms with all others interested.   *   *   *   It is claimed that the good-will went with the sale and transfer of the property of the parties other than the leases.   Grant that it is so.   That does not preclude the plaintiff from an inquiry of what would have been its value had the leases accompanied the rest of the property."

We will not extend this opinion to refer to more than one other case of the many cited justifying this conclusion of the court.   In *Johnson's Appeal*, 115 Pa. St. 129, the law is declared in the syllabus as follows: "A tenant's right of renewal, although it may not be enforceable against the will of the landlord, is a property or asset, incident to an existing lease.   When a lease is held by a partnership, the chance or opportunity of renewal is in itself a distinct asset of the partnership, in which all the partners have an interest.   One partner in a firm cannot therefore take a new lease, or a renewal of an existing one of the firm, in his own name, or for his own benefit, without being liable to account for it to the partnership.   The dissolution of a partnership does not annul or change the relation of former partners in relation to the right of the renewal of a partnership lease.   After the dissolution, the original leases remain partnership property, for the purpose of liquidation.   The obligation of each partner to deal with them, not for his individual benefit, but for the common or joint interest, remains.   Where, after the dissolution of a partnership, one of the partners secures for himself, without the permission of his copartner, a renewal of the premises in which the business of the partnership had been carried on, he will be compelled to account for the value of this renewal, in a settlement of the partnership business.   If the parties fail to agree as to its value, it will be fixed by a master."   It follows, then, that this new lease which the plaintiff took for these premises inured to the benefit of the partnership.   A lease and possession constitute an interest in real estate.   This was an

equitable interest and gave the right of possession of the premises to both partners equally. Neither party could summarily remove the other until these rights were adjudicated. They were partnership rights which are always held to be cognizable in a court of equity.

And, again, an action of forcible entry and detainer is a possessory action. The court must determine whether the plaintiff had the right to the possession of the premises and to exclude the defendant therefrom. In *Dawson v. Dawson,* 17 Neb. 671, which was an action of forcible entry and detainer, this court said: "To maintain that action the contest is limited to the naked right of possession of the premises. If the testimony shows that the defendant has an equitable interest in the premises, one that can be protected only by a court of equity, the action will not lie." The rule is that a justice of the peace has no jurisdiction to adjudicate a right of possession that depends upon an equitable interest in the premises. This renewal lease being in equity the property of both parties, one party has as much right to possession as the other. A justice of the peace cannot partition the matter and assign the lease to either party; he cannot authorize a sale of the lease allowing these partners, if they desire, to bid at the sale as a court of equity might do, nor apply in any way the general principles of equity to an adjustment of the controversy between the parties. In all of the cases cited, the actions were in equity to settle the rights of the contending parties. It is doubtful whether a case can be found where it was attempted to adjudicate such a question as was here presented in an action of forcible entry and detainer. The reason for this is plain. It is not necessary that a defendant should be able to establish by a preponderance of the evidence an equitable right to the possession of the premises in order to defeat the summary process of forcible entry and detainer. A justice of the peace cannot weigh and determine such evidence. It is sufficient if the defendant shows that he has in good faith an equitable claim of right of possession

which it is the province of a court of equity to determine and which is necessary to determine in order to adjudicate the right of possession. If the justice of the peace was without jurisdiction, the district court could not obtain jurisdiction by appeal.

The judgment of the district court is therefore reversed and the cause remanded.

REVERSED.