Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2025 08:09 AM CDT

- 592 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

Woodsonia Hwy 281, LLC, appellee, v.
American Multi-Cinema, Inc., appellant.

___ N.W.3d ___

Filed March 14, 2025.    No. S-24-004.

1. **Motions to Dismiss: Jurisdiction: Appeal and Error.** Subject matter
   jurisdiction is a question of law. In reviewing a trial court's decision on
   a motion to dismiss for lack of subject matter jurisdiction, an appellate
   court employs a de novo standard of review.
2. **Forcible Entry and Detainer: Jurisdiction: Legislature.** Because a
   court's jurisdiction over forcible entry and detainer actions arises out of
   a legislative grant, it is inherently limited by that grant.
3. **Forcible Entry and Detainer: Legislature.** In Nebraska, the Legislature
   has limited the scope of forcible entry and detainer actions to two cir-
   cumstances: (1) complaints of unlawful and forcible entry into lands
   and tenements and the detention of the same and (2) complaints against
   those who, having a lawful and peaceable entry into lands or tenements,
   unlawfully and by force hold the same.
4. **Forcible Entry and Detainer: Words and Phrases.** Forcible entry
   and detainer actions are special statutory proceedings designed to pro-
   vide a speedy and summary method by which the owner of real estate
   might regain possession of it from one who had unlawfully and forcibly
   entered into and detained possession thereof, or one who, having law-
   fully entered, then unlawfully and forcibly detained possession.
5. **Forcible Entry and Detainer: Courts: Jurisdiction.** Given the limited
   scope of forcible entry and detainer, when a court hears such an action,
   it sits as a special statutory tribunal to summarily decide the issues
   authorized by the statute and does not have the power to hear and deter-
   mine other issues.
6. **Forcible Entry and Detainer.** Forcible entry and detainer actions
   prevent protracted litigation by limiting the scope of the proceeding so
   collateral issues not connected with the question of possession do not
   burden or delay the proceeding.

- 593 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

7. ____. In an action for forcible entry and detainer, the contest is limited to the naked right of possession of the premises.

8. **Forcible Entry and Detainer: Title.** Because a forcible entry and detainer action is merely possessory, the question of title to real estate cannot be either tried or determined in the case.

9. **Forcible Entry and Detainer: Title: Jurisdiction.** A forcible entry and detainer action does not try the question of title, but only the immediate right of possession. Thus, when a party attempts to interject a title dispute into a forcible entry and detainer action, thereby transforming the proceedings into an action to determine title, the court is divested of jurisdiction.

10. ____: ____: ____. Where the right to possession in a forcible entry and detainer action involves a title dispute, resort must be had not only to another tribunal, but also to a different form of action.

11. **Forcible Entry and Detainer: Title: Jurisdiction: Dismissal and Nonsuit.** If the court in a forcible entry and detainer action can find and determine the right of possession without at the same time determining the rights of the parties, legal or equitable, in the property itself, it cannot be said that the title is drawn into question. But if the claimant's right of possession depends on resolving some right of the defendant, whether legal or equitable, in the property itself, the court must dismiss the forcible entry and detainer action for want of jurisdiction.

12. **Forcible Entry and Detainer.** The purpose of a forcible entry and detainer action is not to determine either the actual ownership of the property or the legal right to its possession.

13. **Forcible Entry and Detainer: Title: Jurisdiction.** In a forcible entry and detainer action, the defendant's mere assertion that a title claim exists is not enough to deprive a court of jurisdiction. Instead, a court may proceed until the evidence discloses that the question involved is one of title.

14. **Title: Leases.** Whether an owner's title to property is encumbered by a lease is a question bearing on title.

15. **Forcible Entry and Detainer: Landlord and Tenant: Contracts.** A forcible entry and detainer action is not the proper action to resolve a contract dispute between a landlord and tenant.

Appeal from the District Court for Hall County, ANDREW C. BUTLER, Judge, on appeal thereto from the County Court for Hall County, ALFRED E. COREY III, Judge. Judgment of District Court vacated, and cause remanded with directions.

- 594 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

Daniel L. Lindstrom and Nicole J. Luhm, of Jacobsen Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Gregory C. Scaglione and Emily M. Coffey, of Koley Jessen, P.C., L.L.O., for appellee.

Funke, C.J., Cassel, Stacy, Papik, and Freudenberg, JJ.

Stacy, J.

In this forcible entry and detainer action,[1] an evicted commercial tenant appeals from a writ of restitution entered by the county court and affirmed by the district court.[2] A threshold issue on appeal is whether the evidence in this case presented a "title dispute" that deprived the county court of subject matter jurisdiction.[3] For reasons we will explain, we hold this case presented a title dispute and therefore the county court should have dismissed it for lack of jurisdiction. We vacate the judgment of the district court and remand the cause with directions to vacate the county court's judgment and further remand the cause to the county court with directions to dismiss.

## I. BACKGROUND

### 1. Parties

Conestoga Mall 2022, LLC (Conestoga), owned and operated a retail shopping mall in Grand Island, Nebraska. Beginning in 2003, Conestoga leased approximately 17,000 square feet

---

[1] See Neb. Rev. Stat. §§ 25-21,219 to 25-21,235 (Reissue 2016 & Cum. Supp. 2024).

[2] See § 25-21,233 and Neb. Rev. Stat. §§ 25-2728 (Cum. Supp. 2024) and 25-2733 (Reissue 2016).

[3] See, e.g., *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 303, 854 N.W.2d 774, 777 (2014) (holding "[o]ur case law requires a court to dismiss a forcible entry and detainer action upon receiving evidence of the existence of a title dispute"); *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 638, 667 N.W.2d 538, 542 (2003) ("a court cannot determine a question of title in a forcible entry and detainer action[, and] if the resolution of the case would require the court to determine a title dispute, it must dismiss the case for lack of jurisdiction").

- 595 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

of space in the shopping mall to Dickinson Theatres, Inc. (Dickinson), pursuant to a long-term lease described in more detail below. In 2015, Dickinson was acquired by American Multi-Cinema, Inc. (AMC). AMC assumed the commercial lease and continued to operate the movie theater in the shopping mall.

In 2022, Conestoga agreed to sell the shopping mall to Woodsonia Hwy 281, LLC (Woodsonia). Woodsonia planned to redevelop the shopping mall property using tax increment financing.[4]

## 2. Lease

The terms of the commercial lease between Conestoga and Dickinson, executed in 2003, are relevant to the issues on appeal, so we describe them in some detail. The lease had an initial term of 15 years with the option to extend the lease for two additional 5-year terms. AMC assumed Dickinson's leasehold interest when it acquired Dickinson in 2015. In 2018, AMC exercised its option to extend the lease for an additional 5-year term, through December 31, 2023. The record on appeal is silent as to any additional extensions, but no party argues that the lease expired at any point in this litigation. Instead, Woodsonia argues that the lease was terminated pursuant to the eminent domain provisions, which we describe next.

Article 15 of the lease is titled "Eminent Domain," and it is central to the parties' dispute. We quote the relevant provisions of article 15 now and discuss the provisions in more detail later:

> 15.1 _Taking._ If the Demised Premises, or a substantial part thereof, shall be taken in eminent domain, or conveyed under threat of condemnation proceedings, then this Lease shall forthwith terminate and end upon the taking thereof as if the original term provided in said Lease expired at the time of such taking . . . .

---

[4] See Neb. Rev. Stat. §§ 18-2101 to 18-2157 (Reissue 2022 & Cum. Supp. 2024) (Community Development Law).

- 596 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

. . . .

15.3 <u>No Claim Against Landlord</u>. It is understood and agreed that in the event of the termination of this Lease as provided under this Article, Tenant shall have no claim against Landlord for the value of any unexpired term of this Lease and no right or claim to any part of the award [to the Landlord] made on account thereof, except as specifically provided in this Article.

. . . .

15.5 <u>Transfer of Landlord's Interest to Condemnor</u>. Landlord may, without any obligation or liability to Tenant, agree to sell and/or convey to the condemnor the Demised Premises, the Shopping Center or any portion thereof, sought by the condemnor, free from this Lease and the rights of Tenant hereunder, without first requiring that any action or proceeding be instituted or, if instituted, pursued to a judgment. In such event, this Lease shall be deemed terminated effective on the date of such transfer.

### 3. REDEVELOPMENT PROPOSAL AND APPROVAL

Woodsonia commissioned a blight study of the shopping mall property, and in September 2022, it presented the study and a redevelopment proposal to the Grand Island City Council.[5] Thereafter, the city council engaged in a review under the Community Development Law[6] and ultimately approved Woodsonia's redevelopment plan and its request for tax increment financing. AMC argues there were various irregularities in the redevelopment approval process. We do not elaborate on those arguments in this appeal, except to note that AMC generally contends the irregularities rendered any threat of condemnation pretextual and thus insufficient to trigger the eminent domain provisions of the lease.

Following the city council's approval of the redevelopment plan, Conestoga formally conveyed to Woodsonia, on

---

[5] See § 18-2101.02(2).

[6] See §§ 18-2101 to 18-2157.

- 597 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

March 1, 2023, all of Conestoga's "right, title, and interest in and to" the shopping mall. On March 3, Woodsonia recorded the redevelopment contract and a special warranty deed reciting that the shopping mall property was conveyed "free from encumbrances, except those Permitted Exceptions set forth on **Exhibit A** attached hereto and incorporated herein by this reference." As relevant here, one such permitted exception was "[t]he rights or interest of tenants in possession, as tenants only, pursuant to unrecorded or recorded eases, contracts, and/or verbal agreements . . . ."

### 4. Woodsonia Takes Steps
### to Terminate Leases

In furtherance of the redevelopment project, Woodsonia successfully negotiated the termination of most of the leases in the shopping mall, with the exception of AMC and a few other tenants. Because Woodsonia had been unable to negotiate termination of AMC's lease, it took steps to terminate the lease pursuant to the "Eminent Domain" provisions. AMC contends that none of the steps taken by Woodsonia were sufficient to trigger the eminent domain provisions of the lease or to terminate the lease.

As relevant to the issues on appeal, those steps included a March 8, 2023, letter from Woodsonia to AMC, a March 15 Resolution by the city of Grand Island's community redevelopment authority (CRA), and a March 31 letter from the CRA to AMC. We summarize each in the sections that follow.

### (a) March 8, 2023, Letter

On March 8, 2023, Woodsonia's attorney sent a letter to AMC, stating that if "a mutual and amicable termination of AMC's Lease" could not be reached, then "government agencies will exercise eminent domain powers to take AMC's entire leasehold interest in exchange for fair compensation as defined and provided by the Nebraska Constitution and laws." The March 8 letter also advised AMC as follows:

- 598 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

- "Woodsonia plans to convey AMC's Leasehold interest to the condemnor if and when the [CRA] threatens to take and end the AMC's entire leasehold interest."
- The letter was Woodsonia's "*final pre-suit* effort to negotiate a mutual and amicable termination of AMC's Lease, as time is of the utmost essence."
- Woodsonia believed that if an amicable and reasonable settlement were not reached quickly, "the governmental authorities will be disappointed and will then have to pursue a total taking of AMC's leasehold interest in exchange for fair compensation," which compensation would be distributed to Woodsonia under the terms of the lease.

The March 8, 2023, letter did not include a specific settlement offer, but it "request[ed] a telephonic conference the week of March 13, 2023," to discuss "the mutual termination of AMC's Lease." There is no indication in the record of any further communication between Woodsonia and AMC regarding the March 8 letter.

### (b) March 15, 2023, Resolution

On March 15, 2023, the CRA adopted resolution No. 430, which resolved:

> If Woodsonia is unable to reach a workout regarding the termination of the Leases [(including AMC's lease)] by March 17, 2023, the [CRA] shall begin the negotiations and the process of exercising its eminent domain powers (a) to take and terminate the Leasehold Interests and not to transfer those Leasehold Interests, consistent with Neb. Rev. Stat. § 76-710.04(3); and (b) to pay or deposit (i) the fair market value of the remainder of the term of the Leases (cost of renting) *minus* the rent tenant would have had to pay, together with (ii) relocation cost reimbursement and any other compensation required by Nebraska law.
>
> If [the CRA's] forthcoming good faith negotiations . . . and reasonable attempts to induce settlement with

- 599 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

the tenants holding the Leasehold Interests fail, [the CRA] shall proceed with such takings which will not be for the primary purpose of economic development, but will be instead for the primary purpose(s) set forth in Neb. Rev. Stat. § 76-710.04(3).[7]

The resolution also stated that the CRA "shall" engage the same attorney who was representing Woodsonia in the redevelopment project, which it did.

### (c) March 31, 2023, Letter

On March 31, 2023, the CRA, now represented by Woodsonia's attorney, sent a settlement letter to AMC via certified mail with a copy by email. This letter informed AMC as follows:

• The CRA had "decided to exercise its eminent domain powers to take AMC's entire leasehold interest in exchange for fair compensation."
• The appraised value of the leasehold interest was $0, but "for settlement purposes and for a quick resolution of this matter," the CRA offered to pay AMC $185,000 for a mutual termination of the lease and AMC's agreement to fully surrender and vacate the premises. That offer would "remain open until April 7, 2023, at which time it will become null and void."
• If a negotiated resolution could not be reached by the deadline, the CRA would "have no alternative but to turn the acquisition process over to [its counsel] for legal action to secure AMC's leasehold interest in the Premises under the AMC Lease."

The record does not indicate any further communication between the parties regarding the March 31, 2023, settlement letter.

---

[7] But see § 18-2122 (CRA has right to acquire property by eminent domain "which it may deem necessary for a redevelopment project" after adoption of resolution).

- 600 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

### (d) Woodsonia Executes Transfer
### of AMC's Lease

Also on March 31, 2023, Woodsonia and the CRA executed what was titled a "Transfer and Termination of AMC Lease Dated Effective March 31, 2023." That document provided in relevant part:

> In light of the CRA's threat of condemnation proceedings, Woodsonia hereby transfers, assigns and conveys to the CRA AMC's entire leasehold interest in the Premises under the AMC Lease, and the CRA (as the new lessee) and Woodsonia (as the lessor) hereby mutually terminate the AMC Lease dated effective March 31, 2023.

AMC challenges the validity of this transfer and argues the lease was not terminated by the actions of Woodsonia and the CRA.

### 5. Forcible Entry and Detainer Action

On April 4, 2023, Woodsonia notified AMC that its leasehold interest had been transferred to the CRA and terminated effective March 31, 2023. Woodsonia served a 3-day notice to quit,[8] and on April 14, it filed this forcible entry and detainer action in the Hall County Court. The same day, Woodsonia served AMC with summons and a copy of the complaint. Trial was set for April 27.

Woodsonia's 415-page complaint alleged facts as generally set forth above and attached numerous supporting exhibits, including the subject lease and related assignments; the recorded warranty deed and redevelopment contract; several of the resolutions relating to the redevelopment project; the March 8 and March 31, 2023, letters to AMC; the March 31 "transfer and termination" agreement; and the 3-day notice to quit.

Two days before trial, Woodsonia submitted a brief, arguing that the evidence would show it was entitled to immediate possession because (1) under the eminent domain provisions

---

[8] See § 25-21,221.

- 601 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

of the lease, Woodsonia had the right to convey AMC's lease-hold interest to the CRA under threat of condemnation and thereby terminate the lease; (2) Woodsonia exercised that right; (3) such lease provisions were valid and enforceable; and (4) the condemnation decisions of the CRA were not illegal, arbitrary, unreasonable, or clearly wrong.[9]

The day of trial, AMC moved to dismiss the action for lack of subject matter jurisdiction. Citing the settled proposition that courts do not have jurisdiction to try title disputes in forcible entry and detainer actions,[10] AMC argued that Woodsonia's complaint presented a title dispute because "[i]n order to decide the issues in this case, [the] Court must first resolve a . . . dispute between the parties over title to the lease-hold estate." AMC claimed that it was still legally entitled to possess the demised premises because the conditions precedent to termination under eminent domain provisions of the lease had not been met. In other words, it was AMC's position that because there was a dispute about whether the lease had been terminated or was still in full force and effect, the case presented a "title dispute" that could not be resolved in a forcible entry and detainer action.

The county court took up the motion to dismiss simultaneously with trial on the merits of the forcible entry and detainer action. No evidence was adduced on the motion to dismiss, but during trial, several affidavits were offered to

---

[9] See, § 18-2122 ("[a]n authority shall have the right to acquire by the exercise of the power of eminent domain any real property . . . after the adoption by it of a resolution declaring that the acquisition of the real property described therein is necessary[, and] the resolution shall be conclusive evidence that the acquisition of such real property is necessary for the purposes described therein"); *Fitzke v. City of Hastings*, 255 Neb. 46, 56, 582 N.W.2d 301, 309 (1998) ("a district court may disturb the decision of a CRA only if it determines that the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong").

[10] See, e.g., *Cummins Mgmt. v. Gilroy, supra* note 3.

- 602 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

prove service of the 3-day notice to quit[11] and to authenticate the various documents Woodsonia relied upon to establish its claim that AMC's leasehold interest had been terminated.

At the conclusion of the evidence, the county court announced its ruling from the bench. It overruled AMC's motion to dismiss, reasoning the legal issues presented for review did not amount to a title dispute and, therefore, it had jurisdiction to decide the forcible entry and detainer. On the merits of the forcible entry and detainer, the court expressly found that the lease contained express termination provisions conditioned on a threat of condemnation, that the lease terms were unambiguous, and that the evidence showed the termination provisions had been satisfied. It therefore concluded the lease had been terminated and Woodsonia was entitled to restitution of the leased premises.

After the court pronounced its judgment of restitution, AMC asked the court to make specific findings of fact and conclusions of law.[12] Consistent with that request, the county court entered a written order on May 8, 2023, overruling the motion to dismiss and finding that "Woodsonia met its burden of proof" in the forcible entry and detainer action. That order included an express finding that Woodsonia had proved the lease was terminated "under both conditions 15.1 and 15.5" when Woodsonia "conveyed a portion of the premises, namely AMC's lease, to the CRA . . . without any obligation or liability to AMC and free of any [of] AMC's rights." The same day, the county court issued a writ of restitution.

### 6. Appeal to District Court

AMC timely appealed, and the district court, sitting as an appellate court, affirmed. AMC identified 17 separate errors before the district court, but we address only those that are

---

[11] See § 25-21,223 ("person making the service shall file with the court an affidavit stating with particularity the manner in which he or she made the service").

[12] See Neb. Rev. Stat. § 25-1127 (Reissue 2016).

- 603 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

relevant to the assignments of error raised on further appeal to this court.

The district court first addressed AMC's jurisdictional argument that the forcible entry and detainer action presented a "title dispute" that deprived the county court of subject matter jurisdiction. The district court found no case directly on point but reasoned that "Nebraska case law strongly suggests that where a lease expressly provides for termination . . . due to certain events, a forcible entry and detainer action is available to determine possession." Applying that reasoning, the district court found that sections 15.1 and 15.5 of the lease were unambiguous and that such provisions expressly "allowed Woodsonia to transfer AMC's leasehold interest" under threat of condemnation. The court further found, based on the evidence, that Woodsonia had shown that AMC's lease was "terminated upon such transfer" and that Woodsonia was therefore entitled to possession of the property. It affirmed the judgment of the county court.

AMC filed this timely appeal, which we moved to our docket.[13]

## II. ASSIGNMENTS OF ERROR

AMC assigns, restated, that the district court erred in (1) concluding it had jurisdiction over the forcible entry and detainer action because it did not involve a "title dispute" and (2) construing the condemnation provisions in the lease to authorize Woodsonia to convey AMC's leasehold interest in the demised premises without also conveying any portion of Woodsonia's own fee interest in the demised premises.

## III. STANDARD OF REVIEW

[1] Subject matter jurisdiction is a question of law.[14] In reviewing a trial court's decision on a motion to dismiss for

---

[13] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[14] *Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024).

- 604 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

lack of subject matter jurisdiction, an appellate court employs a de novo standard of review.[15]

## IV. ANALYSIS

Before the county court, and again on appeal to the district court and to this court, AMC has argued this forcible entry and detainer case should be dismissed for lack of subject matter jurisdiction because it presents a title dispute. AMC's jurisdictional argument relies on an established proposition of law in our forcible entry and detainer jurisprudence:

> For well over a century, we have held that a court cannot determine a question of title in a forcible entry and detainer action; if the resolution of the case would require the court to determine a title dispute, it must dismiss the case for lack of jurisdiction.[16]

The parties disagree about whether Woodsonia's forcible entry and detainer action presented a title dispute. AMC contends it did, reasoning that the county court could not determine whether Woodsonia was entitled to immediate possession of the demised premises without first resolving a title dispute over "who owns the leasehold estate."[17] Woodsonia, on the other hand, contends that AMC has not raised a "legitimate title issue,"[18] reasoning that "the issue of possession was entirely presented and resolved based on undisputed facts and unambiguous contractual provisions, not based on a title dispute."[19]

The jurisdictional question presented in this appeal is one that our published opinions have not directly addressed: In

---

[15] See *Muller v. Weeder*, 313 Neb. 639, 986 N.W.2d 38 (2023).

[16] *Cummins Mgmt. v. Gilroy, supra* note 3, 266 Neb. at 638, 667 N.W.2d at 542.

[17] Brief for appellant at 18.

[18] Brief for appellee at 19.

[19] *Id.*

- 605 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

a forcible entry and detainer action, is a question of title presented if the landlord and tenant dispute whether the tenant's leasehold interest was validly terminated? To answer this question, we begin by reviewing the limited scope of forcible entry and detainer actions under Nebraska law. We then focus more specifically on cases explaining why forcible entry and detainer actions must be dismissed for lack of jurisdiction when a title dispute is presented. Finally, we apply that precedent to decide whether this forcible entry and detainer action presents a title dispute.

### 1. Forcible Entry and Detainer Actions

[2] A forcible entry and detainer action is a creature of the Legislature and did not exist at common law.[20] We have recognized that because a court's jurisdiction over forcible entry and detainer actions arises out of a legislative grant, it is inherently limited by that grant.[21]

[3] In Nebraska, the Legislature has limited the scope of forcible entry and detainer actions to two circumstances: (1) "complaints of unlawful and forcible entry into lands and tenements and the detention of the same" and (2) "complaints against those who, having a lawful and peaceable entry into lands or tenements, unlawfully and by force hold the same."[22] The latter category of cases includes those where (1) tenants are deemed to be holding over their term because they have failed to pay rent when it became due[23]; (2) tenants have "threatened the health or safety" of other tenants, the landlord, or the landlord's agents and employees[24]; (3) there has been

---

[20] See *Armstrong v. Mayer*, 60 Neb. 423, 83 N.W. 401 (1900).

[21] See *Cummins Mgmt. v. Gilroy, supra* note 3.

[22] § 25-21,219. See, also, *Federal Nat. Mortgage Assn. v. Marcuzzo, supra* note 3; *Stuthman v. Stuthman*, 245 Neb. 846, 515 N.W.2d 781 (1994).

[23] § 25-21,220(1).

[24] § 25-21,220(2).

- 606 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

a sale of the property pursuant to a "judgment or decree" and the judgment debtor was in possession of the property when the sale was made[25]; (4) there has been a sale on partition or a sale by executors, administrators, or guardians, and the sale has been "examined by the proper court" and "adjudged legal"[26]; and (5) the defendant is occupying the land or tenement "without color of title" and the "complainant has the right of possession."[27]

In this forcible entry and detainer action, Woodsonia relied exclusively on the last of these five statutory categories and specifically alleged that because AMC's "entire leasehold interest" had been conveyed to the CRA and then terminated, AMC was "occupying the [demised premises] without color of title" and "in violation of Woodsonia's right to possess" the premises.

By statute, trial of an action for forcible entry and detainer must be "held not less than ten nor more than fourteen days" after summons is issued.[28] And after hearing the evidence, restitution of the premises must be ordered if the court or jury finds that "an unlawful and forcible entry has been made and that the same lands or tenements are held by force"[29] or that "after a lawful entry, [the lands or tenements] are held unlawfully."[30]

[4,5] Based on this statutory framework, we have described forcible entry and detainer actions as "special statutory proceeding[s] designed to provide a speedy and summary

---

[25] § 25-21,220(3).

[26] § 25-21,220(4).

[27] § 25-21,220(5).

[28] § 25-21,223.

[29] § 25-21,219.

[30] *Id.* See, also, §§ 25-21,226 (judgment upon trial to court) and 25-21,227 (trial by jury).

- 607 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

method by which the owner of real estate might regain possession of it from one who had unlawfully and forcibly entered into and detained possession thereof, or one who, having lawfully entered, then unlawfully and forcibly detained possession."[31] Given the limited scope of forcible entry and detainer, we have said that when a court hears such an action, it "'sits as a special statutory tribunal to summarily decide the issues authorized by the statute'" and does not have the "'power to hear and determine other issues.'"[32]

[6-8] Forcible entry and detainer actions prevent protracted litigation by limiting the scope of the proceeding so collateral issues not connected with the question of possession do not burden or delay the proceeding.[33] In an action for forcible entry and detainer, the contest is limited to the naked right of possession of the premises.[34] Because the action is merely possessory, the question of title to real estate cannot be either tried or determined in the case.[35]

---

[31] *Cummins Mgmt. v. Gilroy, supra* note 3, 266 Neb. at 639, 667 N.W.2d at 542 (internal quotation marks omitted). See *Estabrook v. Hateroth*, 22 Neb. 281, 34 N.W. 634 (1887). See, also, § 25-21,219. See, generally, *Wells v. Cox*, 84 Neb. 26, 120 N.W. 433 (1909) (discussing forcible entry and detainer origin and Nebraska statutes).

[32] See *Cummins Mgmt. v. Gilroy, supra* note 3, 266 Neb. at 640, 667 N.W.2d at 543.

[33] *Federal Nat. Mortgage Assn. v. Marcuzzo, supra* note 3.

[34] *Dawson v. Dawson*, 17 Neb. 671, 24 N.W. 339 (1885). Accord, *Jones v. Schmidt*, 163 Neb. 508, 80 N.W.2d 289 (1957); *Gregory v. Pribbeno*, 143 Neb. 379, 9 N.W.2d 485 (1943); *Van Sant v. Beuder*, 101 Neb. 680, 164 N.W. 711 (1917); *Knapp v. Reed*, 88 Neb. 754, 130 N.W. 430 (1911). See § 25-21,220.

[35] See, *Brennan v. Brennan*, 214 Neb. 125, 332 N.W.2d 696 (1983); *Hogan v. Pelton*, 210 Neb. 530, 315 N.W.2d 644 (1982). See, also, *Cummins Mgmt. v. Gilroy, supra* note 3; *Jones v. Schmidt, supra* note 34; *Towles v. Hamilton*, 94 Neb. 588, 143 N.W. 935 (1913); *Tarpenning v. King*, 60 Neb. 213, 82 N.W. 621 (1900).

- 608 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

## 2. Title Disputes in
### Forcible Entry and Detainer

[9,10] A forcible entry and detainer action does not try the question of title, but only the immediate right of possession.[36] Thus, when a party attempts to interject a title dispute into a forcible entry and detainer action, thereby transforming the proceedings into an action to determine title, the court is divested of jurisdiction.[37] Where the right to possession in a forcible entry and detainer action involves a title dispute, "'resort must be had not only to another tribunal but also to a different form of action.'"[38]

[11,12] As a general matter, if the court in a forcible entry and detainer action "can find and determine the right of possession without at the same time determining the rights of the parties, legal or equitable, in the property itself, it cannot be said that the title is drawn in question."[39] But if the claimant's right of possession depends on resolving "some right of [the] defendant, whether legal or equitable, in the property itself,"[40] the court must dismiss the forcible entry and detainer action for want of jurisdiction.[41] That is so because the purpose of a forcible entry and detainer action is not to

---

[36] *Federal Nat. Mortgage Assn. v. Marcuzzo, supra* note 3; *Cummins Mgmt. v. Gilroy, supra* note 3.

[37] See, *Cummins Mgmt. v. Gilroy, supra* note 3; *Pettit v. Black*, 13 Neb. 142, 12 N.W. 841 (1882).

[38] *Cummins Mgmt. v. Gilroy, supra* note 3, 266 Neb. at 639, 667 N.W.2d at 543 (emphasis omitted) (quoting *Pence v. Uhl*, 11 Neb. 320, 9 N.W. 40 (1881)).

[39] *Gregory v. Pribbeno, supra* note 34, 143 Neb. at 383, 9 N.W.2d at 488. See, also, *Kouma v. Murphy*, 129 Neb. 892, 263 N.W. 211 (1935); *Stone v. Blanchard*, 87 Neb. 1, 126 N.W. 766 (1910).

[40] *Jones v. Schmidt, supra* note 34, 163 Neb. at 517, 80 N.W.2d at 294.

[41] See *Jones v. Schmidt, supra* note 34. Accord, *Stone v. Blanchard, supra* note 39; *Dawson v. Dawson, supra* note 34.

- 609 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

determine either the actual ownership of the property or the legal right to its possession.[42]

[13] That said, in a forcible entry and detainer action, the defendant's mere assertion that a title claim exists is not enough to deprive a court of jurisdiction.[43] Instead, a court may "proceed until the evidence discloses that the question involved is one of title."[44]

Our forcible entry and detainer cases have found title disputes sufficient to deprive a court of jurisdiction when the evidence showed the defendant had a claim to the lawful possession of the premises. For example, when a defendant adduced evidence that the parties never negotiated an oral lease and the defendant occupied the land in controversy for 28 years, we held there was a genuine issue as to title that the parties were "entitled to have adjudicated."[45] Similarly, when a plaintiff asserted that the defendant defaulted on a contract of sale, we held that a title question was presented because the truth of the assertion needed to "be fully adjudicated" in a proper proceeding.[46] And as particularly relevant here, more than a century ago, we held that because the evidence showed a dispute about "[w]hether the contract under which the defendants hold possession is valid or not," a title dispute was presented and the court should have dismissed the forcible entry and detainer action.[47]

---

[42] See, *Miller v. Maust*, 128 Neb. 453, 259 N.W. 181 (1935); *Tarpenning v. King, supra* note 35.

[43] See, e.g., *Federal Nat. Mortgage Assn. v. Marcuzzo, supra* note 3; *Cummins Mgmt. v. Gilroy, supra* note 3; *Pettit v. Black, supra* note 37.

[44] *Cummins Mgmt. v. Gilroy, supra* note 3, 266 Neb. at 640, 667 N.W.2d at 543. See *Pettit v. Black, supra* note 37.

[45] *Jones v. Schmidt, supra* note 34, 163 Neb. at 517, 80 N.W.2d at 294.

[46] *C., B. & Q. R. R. Co. v. Skupa*, 16 Neb. 341, 346, 20 N.W. 393, 395 (1884). See *Lipp v. Hunt*, 25 Neb. 91, 41 N.W. 143 (1888).

[47] *Dawson v. Dawson, supra* note 34, 17 Neb. at 672, 24 N.W. at 340.

- 610 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

With this established precedent in mind, we turn to whether the evidence in this case presented a title dispute. We conclude it did.

### 3. Dispute Over Termination of Leasehold Interest Presents "Title Dispute" That Cannot Be Determined in Forcible Entry and Detainer Action

As stated, AMC contends this case presented a title question because the court could not determine if Woodsonia had an immediate right to possess the property unless it first resolved the parties' dispute over whether the lease had been validly terminated or was still in full force and effect. Our prior forcible entry and detainer cases have not considered a factual situation identical to the one presented here. But on this record, and in light of our precedent, we have no difficulty concluding that Woodsonia's forcible entry and detainer presents a title question.

First, as foreshadowed by Woodsonia's 415-page complaint, and as established by the evidence adduced at trial and the arguments of the parties, for the court to determine whether Woodsonia was entitled to immediate possession, it would first need to decide whether AMC's leasehold interest had been validly terminated, which in turn would require the court to decide whether certain automatic termination provisions in the lease were both triggered and satisfied.

The lower courts appear to have concluded there was no title dispute because, after reviewing the evidence, those courts believed Woodsonia had sufficiently proved its allegation that under the eminent domain provisions of the lease, AMC's leasehold interest was validly conveyed by Woodsonia to the CRA and thereby terminated. But it is immaterial whether a court thinks the evidence is sufficient to resolve a title dispute in a forcible entry and detainer action, because it plainly lacks jurisdiction to do so.

[14] We understand Woodsonia to advance two reasons why this case did not present a title dispute. First, it argues there

- 611 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

was no title dispute because the evidence showed Woodsonia was the "fee simple owner"[48] of the property. But evidence showing that Woodsonia was the owner of the demised property has no bearing on the title dispute here, which is over the validity of AMC's leasehold interest. We have long recognized that a lease and possession constitute an interest in real estate[49] and that a tenant has a "possessory title while his [or her] lease remains in force."[50] AMC asserted, and the evidence supported, that there was a dispute about whether that lease remained in force or had been validly terminated. Whether an owner's title to property is encumbered by a lease is a question bearing on title.[51] To the extent Woodsonia argues otherwise, it is mistaken.

[15] Second, Woodsonia argues that the parties' dispute only "involve[d] a simple contractual claim based on unambiguous contractual terms and uncontroverted facts" and, therefore, did not present a title dispute.[52] We understand

---

[48] Brief for appellee at 19.

[49] *Knapp v. Reed, supra* note 34. See, also, *Wilson v. Fieldgrove*, 280 Neb. 548, 787 N.W.2d 707 (2010); *Kirby v. Holland*, 210 Neb. 711, 316 N.W.2d 746 (1982); *Statler v. Watson*, 160 Neb. 1, 68 N.W.2d 604 (1955); *Towle v. Morrell*, 129 Neb. 398, 261 N.W. 827 (1935); *Parsons v. Prudential Real Estate Co.*, 86 Neb. 271, 125 N.W. 521 (1910); *Weaver v. Coumbe*, 15 Neb. 167, 17 N.W. 357 (1883) (stating lease provides right, title, and interest to lessee).

[50] *Lausman v. Drahos*, 10 Neb. 172, 176, 4 N.W. 956, 959 (1880). See, e.g., *Zitting v. Facka*, 123 Neb. 159, 161, 242 N.W. 373, 374 (1932) (stating tenant held "title to the leases"); *Chicago, B. & Q. R. Co. v. Neville*, 102 Neb. 817, 170 N.W. 176 (1918) (title quieted under lease to lessee); *Nebraska Mortgage Loan Co. v. Van Kloster*, 42 Neb. 746, 749, 60 N.W. 1016, 1017 (1894) (trustee could not assert "title to the lease"); *McDonald v. Early*, 24 Neb. 818, 40 N.W. 410 (1888) (title quieted under lease to lessee).

[51] See, *Kresha v. Kresha*, 220 Neb. 598, 371 N.W.2d 280 (1985) (analyzing whether co-owner's title was encumbered by existing lease); *Omaha Country Club v. Douglas Cty. Bd. of Equal.*, 11 Neb. App. 171, 645 N.W.2d 821 (2002) (recognizing that title to fee simple estate can be encumbered by any other severed estate).

[52] Brief for appellee at 20.

- 612 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
WOODSONIA HWY 281 v. AMERICAN MULTI-CINEMA
Cite as 318 Neb. 592

Woodsonia to be suggesting there was no title dispute because it had adduced all the evidence the county court needed to determine whether the lease had been validly terminated. But as we already explained, it is immaterial whether a court thinks it is able to resolve a title dispute based on the evidence offered in a forcible entry, because it lacks jurisdiction to do so as a matter of law. A forcible entry and detainer action is not the proper action to resolve a contract dispute between a landlord and tenant—even one that is "simple."[53]

We conclude, based on the evidence adduced at trial, that Woodsonia's forcible entry and detainer complaint necessarily required judicial resolution of a title dispute concerning the continued validity of AMC's leasehold interest. The county court, therefore, lacked subject matter jurisdiction over the action, and it erred in failing to dismiss the action. And when a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[54]

## V. CONCLUSION

This forcible entry and detainer action presented a title dispute, and the county court, therefore, lacked subject matter jurisdiction and was required to dismiss the action. Because both the county court and the district court lacked subject matter jurisdiction, so do we.[55] We must, therefore, vacate the judgment of the district court and remand the cause to the district court with directions to vacate the judgment of the county court and remand the cause with directions to dismiss the action.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., not participating.

---

[53] See *id.*

[54] *In re Estate of Weeder, ante* p. 393, 16 N.W.3d 137 (2025).

[55] See *Cummins Mgmt. v. Gilroy, supra* note 3.